UNION & PLANTERS' BANK OF MEMPHIS, Respondent, vs. JEF-FERSON, Appellant.

*November 22, 1898 — January 10, 1899.*

*Estoppel: Promissory notes: Mistake: Consideration: Counterclaim: In-solvency.*

1. A bank held notes against a decedent, and also a deposit in his favor, which it might have offset against the notes, but, acting under the mistaken belief that his estate was solvent, it paid such deposit to the administrator, and also surrendered the notes in exchange for notes given by heirs of the decedent. *Held,* that such heirs were estopped from setting up the defense of mistake or want of consideration in an action on their notes, although the estate proved insolvent.

2. The surrender of notes given by a decedent is a sufficient consideration for notes of an equivalent amount given by his heirs.

3. Heirs who give their notes in exchange for notes of their decedent, under the belief that his estate is solvent, cannot, in an action on their notes, counterclaim for moneys paid thereon on the ground of mistake as to such solvency, before the insolvency has been judicially determined.

APPEAL from a judgment of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge. *Affirmed.*

This is an action upon a draft drawn July 14, 1893, by W. B. Pearson & Co., of Chicago, upon the defendant, *Beverly Jefferson,* for $1,200, payable to the plaintiff, and accepted by the defendant. The answer sets up three defenses: (1) Want of consideration; (2) that it was made under false and fraud-

ulent representations on the part of the plaintiff; (3) that it was made under mutual mistake of fact. There was also a counterclaim seeking to recover $1,768.32, alleged to have been paid by the defendant to the plaintiff under mutual mistake of fact. There was a reply, in substance denying the allegations of the counterclaim.

Upon the trial it appeared that one J. W. Jefferson, a business man of Memphis, Tennessee, died in that city June 13, 1892, intestate, leaving the defendant, his brother, of Madison, Wisconsin, and two nephews, W. B. Pearson and F. E. Pearson, of Chicago, his only heirs at law. He owned considerable real estate in Memphis, and also had property in Arkansas, and was supposed by all who had any knowledge of his affairs to be worth from $50,000 to $100,000 above his liabilities. At the time of his death, he was doing business with the plaintiff bank, and was indebted to the bank on three notes,— one for $1,400, dated March 22, 1892, indorsed by D. E. Myers, of Memphis; one dated March 31, 1892, for $1,500, indorsed by Napoleon Hill, of Memphis; and one dated March 3, 1892, for $1,200, secured by a deposit of stock of the Tennessee Brick & Manufacturing Company, of the face value of $1,750. He also had a credit deposit in the bank subject to check of $791.06. Within a few days after the death of J. W. Jefferson, the defendant and W. B. Pearson went to Memphis, and spent several days investigating the affairs of the deceased. On the 20th of June, 1892, the defendant was appointed, by the probate court at Memphis, administrator of the estate, and entered on his duties. On the 30th of June, the bank transferred the deposit balance of $791.06 to the account of *Beverly Jefferson*, administrator. On the 5th of July, following, the defendant and W. B. Pearson gave their own notes to the plaintiff, in place of the notes held by the bank against the deceased. These new notes were discounted by the bank, and the proceeds placed to the credit of *Beverly Jefferson*, as administrator, who then checked out the old notes. The

notes for $1,400 and $1,500 were paid by *Jefferson* in the fall of 1892, but the note for $1,200 was not paid when due, and remained unpaid until the summer of 1893, when the draft in suit was given in its place. After the giving of the three notes by the defendant and Pearson, the credit balance of $791.06 was all drawn out of the plaintiff bank by the defendant, as administrator.

The evidence shows, without dispute, that it was the general understanding in Memphis, which was shared in by the officers of the bank, that J. W. Jefferson, at the time of his death, was a wealthy man, worth somewhere from $50,000 to $100,000. Much of the property which he owned was real estate in Memphis, and all the evidence upon the subject shows that this real estate alone was considered worth considerably more than the amount of the indebtedness of the deceased in June, 1892, but that it declined in value very rapidly after the financial panic of 1893. The debts of the estate were found to be about $30,000, instead of about $20,000, as at first supposed. In 1895 it began to be apparent that the estate would not prove more than sufficient to pay the debts, and proceedings were commenced in chancery to declare the estate insolvent and sell all of the real estate to pay the debts. In February, 1896, a dividend of forty per cent. was declared and paid. It appears that the defendant proved up the claim upon the $1,200 note of J. W. Jefferson, which had been surrendered to him by the bank, and that the dividend of forty per cent. thereon was allowed, and paid over by *Jefferson* to the bank. The proof shows, however, that the estate is not yet closed. There is still a large tract of real estate in Arkansas, worth from $3,000 to $5,000, not yet sold.

A verdict was directed for the plaintiff for the balance due on the draft after deducting the amount of the forty per cent. dividend, which, it appears, had been received by the bank; and the defendant appeals.

For the appellant there was a brief by *Geo. W. & H. S.*

*Bird* and *Morris & Riley*, and oral argument by *Geo. W. Bird.* They argued, among other things, that the obligation, being entered into under a mutual mistake of facts, could not be enforced. *Hurd v. Hall,* 12 Wis. 112; *Lawton v. Howe,* 14 id. 241; *Harran v. Foley,* 62 id. 584; *De Voin v. De Voin,* 76 id. 66; 15 Am. & Eng. Ency. of Law, 645. An administrator who pays a claim in full, both he and the creditor believing the estate to be solvent, can recover back the excess above the percentage allowed on all claims in case it proves to be insolvent. *Wolf v. Beaird,* 123 Ill. 585; *Rogers v. Weaver,* 5 Ohio, 536; *Walker v. Hill,* 17 Mass. 380.

*Frank E. Parkinson,* for the respondent.

WINSLOW, J. The circuit court rightly directed a verdict for the plaintiff. No defense to the action was proven. Certainly, no fraud on the part of the bank officials was proven. They simply shared in the belief which prevailed in the minds of the business men of Memphis who knew the deceased, including his attorney and intimate friends, that his estate was worth from $50,000 to $100,000 above all his debts. All the evidence tends to show that, had the Memphis property been sold at that time, it would have brought far more than enough to pay all debts, but that it declined greatly in value after the panic of 1893, and finally declined so greatly as to make the estate insolvent. The defendant made his own investigations among real-estate men and all who had knowledge on the subject, as to the condition of the estate and value of its property, and did not rely on any information obtained from the officers of the bank. The claim of fraud is entirely without foundation.

As to the alleged mistake of fact, it may perhaps be doubtful whether mere mistaken opinions as to the value of real estate can properly be called such mistake of fact as would justify rescission of a contract; but, however this may be, the evidence shows that the defendant is estopped from making this defense. The bank owed J. W. Jefferson

at the time of his death, upon deposit account, $791.06. By the law of Tennessee, it was entitled to offset this against the notes of J. W. Jefferson, and prove its claim against the estate for the balance. Shannon's Code Tenn. 1896, § 4114. Instead of doing this, it transferred the deposit balance to the credit of the defendant, as administrator, and *after Jefferson* and Pearson had given their individual note of July 5, 1892, allowed the defendant, as administrator, to draw the entire sum from the bank. Thus, the bank has lost the benefit of this deposit, which it might have retained and applied; and it is clear that it allowed this balance to be withdrawn by the defendant because he and Pearson had given their own notes for the notes of J. W. Jefferson. Certainly, the defendant cannot now repudiate liability upon his note when the bank has thus so materially changed its position in reliance upon the note. It is practically an attempt to rescind a contract without returning what has been received by virtue of it.

As to the defense of lack of consideration, it is sufficient to say that the original note of J. W. Jefferson was canceled and surrendered by the bank when it received the note of the defendant and Pearson, and that this constituted a sufficient consideration. In addition to this, it seems clear that the same facts which estop the defendant from pleading mutual mistake will also estop him from pleading want of consideration.

As to the counterclaim for moneys paid upon the two notes of $1,400 and $1,500, under the mistaken supposition that the estate was solvent, it is perhaps sufficient to say that no such recovery can be had while the estate is still unsettled, a part of its real estate not sold, and before it is judicially determined whether there will be any deficiency of assets to meet liabilities. This conclusion is so apparent that a mere statement of it is sufficient.

*By the Court.*— Judgment affirmed.