## DUNTLEY et al. v. ANDERSON.

(Circuit Court of Appeals, Eighth Circuit. March 26, 1909.)

No. 2,925.

1. MINES AND MINERALS (§ 78*)—OIL AND GAS LEASE—FORFEITURE—DEFAULT —WAIVER.

An oil and gas lease declared that, if no well was sunk within 12 months, the lease should be void, unless the lessees should pipe gas to within 100 feet of the lessors' premises and give them free gas until the well was drilled. *Held*, that where an assignee of the lessee piped the gas as required, and the lessors commenced and continued to use the same "under the lease" until the trial of a suit to cancel the same, such use constituted a waiver of his right to cancel the lease because no well was sunk within 12 months.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 206; Dec. Dig. § 78.*]

2. MINES AND MINERALS (§ 73*)—OIL AND GAS LEASE—CONSTRUCTION.

Where an owner of agricultural land executed an oil and gas lease providing that, if it should be detrimental to a sale of the place, the lease should be returned to him, such provision should be construed only to require a rescission if the lease was detrimental to a sale of the land for agricultural or other purposes to which it was then devoted, and did

not authorize a rescission to permit the lessor to dispose of his oil rights to greater advantage.

[Ed. Note.—For other cases, see Mines and Minerals, Dec. Dig. § 73.*]

**8. MINES AND MINERALS (§ 73*)—OIL AND GAS LEASE—TERMINATION.**

An oil and gas lease provided that, in case no oil or gas well was sunk within 12 months, the lease should be void unless the lessee should pipe gas to within 100 feet of the lessor's residence and give him the right to use gas "till well is drilled," and that the lease should be returned if detrimental to a sale of the place. *Held*, that the lessor, while using gas under the lease which had been piped to within 100 feet of his residence free of charge, was not entitled to a cancellation of the lease in equity as detrimental to a sale of his property.

[Ed. Note.—For other cases, see Mines and Minerals, Dec. Dig. § 73.*]

Appeal from the Circuit Court of the United States for the District of Kansas.

Roscoe Pound (W. E. Ziegler and J. H. Dana, on the brief), for appellants.

W. P. Dillard and George R. Snelling, for appellee.

Before ADAMS, Circuit Judge, and RINER and AMIDON, District Judges.

RINER, District Judge. This is an appeal from a decree canceling a lease made by T. L. Anderson and Netta M. Anderson, his wife, to the Pennsylvania Oil Company, to sink wells for the purpose of obtaining oil and gas upon land· owned by the appellee. The lease was executed on the 28th of June, 1900, and gave to the lessee an exclusive right for 10 years from its date to enter upon and "operate" for oil and gas upon the land owned by Anderson, a description of which is set out in the lease. The lease also contained the following provision:

"In case no oil or gas well is sunk on the premises within 12 months from this date, this lease shall become absolutely null and void unless the second parties shall pipe gas to within 100 feet of the residence of parties of the first part and give the parties of the first part the right to use gas for three stoves and four lights in consideration of lease till well is drilled. If this lease shall be detrimental to the sale of this place, this lease shall be returned to the first party."

Prior to the commencement of this suit, and on the 21st day of May, 1904, the appellee, Anderson, served a written notice of cancellation on the appellants, reciting that the lease had now become detrimental to the sale of the property, and demanding that the lease be canceled of record and returned. The notice further prohibited the appellants from going on the land for the purpose of sinking wells for gas or oil. Thereafter Anderson brought this suit in the state court, and it was removed to the federal court by the appellants. The pleadings were there recast to conform to the practice of the federal court, and the case referred to a master to take the testimony and report his findings of fact and "recommendations as to what decree should be entered in the cause."

The master found that Anderson, the appellee, was the owner of the land described in the lease; that the lease was executed by Ander-

son and his wife on the day of its date; that subsequent thereto, and on the 29th of June, 1903, Netta M. Anderson, wife of T. L. Anderson, died; that she at no time owned any interest in the land, other than the interest she might have contingent upon her survival of her husband; that the Pennsylvania Oil Company, the lessee, was a partnership owned by W. P. Brown and Mattie Brown; that on January 3, 1901, the Pennsylvania Oil Company sold and assigned the lease to the Coffeyville Gas Company, a corporation; that on September 15, 1902, the Coffeyville Gas Company, by warranty deed, sold and assigned the lease to the People's Gas Company, a corporation; that on the 14th of October, 1902, the People's Gas Company sold and assigned all its oil rights under the lease, except one-fortieth, to W. P. Brown; that on August 23, 1903, W. P. Brown sold and assigned all rights held by him to the Calumet Oil & Gas Company, a corporation; that on February 17, 1904, the Calumet Oil & Gas Company sold and assigned all its rights under the lease to the Southern Development Company, a corporation; that on the 24th of March, 1904, the Southern Development Company sold and assigned all its oil rights under the lease to the appellants, J. W. Duntley, J. A. Odell, and W. O. Duntley.

The master further found that neither the original lessee nor any of its assigns at any time within 12 months from the date of the lease drilled any wells for oil or gas; neither did they pipe gas to within 100 feet of the residence of the appellee, as provided in the lease; that in September, 1901, the Coffeyville Gas Company, the then holder of the lease, did pipe gas to within 100 feet of appellee's residence upon the leased premises and gave him the right to use the gas for three stoves and four lights; and that he accepted the gas without protest and had continuously used same until the institution of this suit. The testimony shows that one-half mile of pipe was laid for the purpose of conducting the gas to within 100 feet of Anderson's house, and that he at once connected and commenced using the gas, and continued using it up to the time his testimony was taken in this cause. On cross-examination Anderson said:

"Q. You accepted the gas? A. Yes. Q. And commenced using it in your house? A. Yes. Q. You were using it for domestic purposes under the terms of this lease up to the time this action was commenced? A. Yes, sir. Q. You are using it up to this time? A. I used it; but there was none to-day. Q. Well, you used it yesterday? A. Yes. Q. Most of the time you have gas there? Sometimes there may be something the matter with the line, or something of that character, and the flow is not so good as other times; but from the time they first piped the gas to your place, you have used it for domestic purposes? A. Yes, sir."

As shown by the testimony quoted above, the appellee continued to use the gas under the terms of the lease after his notice of rescission, after this suit was brought, and down to the time his testimony was taken. The master found that these facts constituted a waiver of the forfeiture otherwise incurred for not acting within 12 months, but recommended the cancellation of the lease under the second clause, namely:

"If this lease shall be detrimental to the sale of this place this lease shall be returned to the first party."

This recommendation was adopted by the Circuit Court, and a decree entered accordingly.

The finding of the master that the use of the gas by the appellee after the expiration of the 12 months constituted a waiver of the forfeiture for nonaction on the part of the lessee within that time was unquestionably right. The lessor had the undoubted right at the expiration of the 12 months to take advantage of this forfeiture clause for nonaction, if he desired to do so. It was a provision for his interest and his benefit. He was not bound to insist upon it, but might do so if he wished. If he desired to insist upon it, he should have forbade the laying of pipe upon his land and refused to take the gas; but this he did not do. On the contrary, within 15 months after the execution of the lease, he permitted gas to be piped to within 100 feet of his house, connected it up with his house, and continued to use it, as he states, "under the lease," until the time his testimony was taken. We think the master was right in holding that there could, in such circumstances, be no forfeiture under this clause of the lease.

The rule is well settled, we think, that where a party, with full knowledge of his rights, freely does anything which amounts to a recognition of a transaction, or acts in any manner inconsistent with its repudiation, or for a considerable time deliberately permits another to deal with the property or incur expense under the belief that the transaction has been recognized, these acts constitute acquiescence and ratification. Here the appellee had the right to accept or reject this lease at the expiration of 12 months. Instead of declaring it forfeited, he elected to take and retain the benefits under it, and has thereby become bound by the transaction, and cannot avoid its obligation or effect by now taking a position inconsistent therewith. Watkins v. Green, 101 Mich. 493, 60 N. W. 44; Union Bank v. Jefferson, 101 Wis. 452, 77 N. W. 889; Kenny v. Seu Si Lun, 101 Minn. 253, 112 N. W. 220, 11 L. R. A. (N. S.) 831; Hartford Wheel Club v. Traveler's Insurance Co., 78 Conn. 355, 62 Atl. 207.

Neither do we think the lease can be forfeited under the clause which provides that if it proves detrimental to the sale of the property it shall be returned, for the reason that the appellee did not discontinue the use of gas and restore to the lessor what he had received under the lease, and for the further reason that in our view the lease is one and indivisible and the consideration is one and indivisible, and therefore he cannot be permitted to rescind and cancel the part creating the oil rights and leave the part creating the gas rights in force, and in this way continue to receive the benefit of his gas connections, while relieving himself of the substantial burden of the lease. The appellee is seeking relief in a court of equity. He asks the cancellation of a lease, and at the same time is retaining the benefits of the lease by the use of the gas for the purpose of light and fuel, and for which he pays nothing. This we think he cannot do. It is not a question of estoppel, but rather a question of the appellee doing equity before he can get relief in equity. He is here in a court of equity, seeking relief without doing or offering to do equity, and is asking the court to cancel a lease under which for several years, and during the progress of the cause he was obtaining benefits. The consideration

for keeping the lease in force, both as to gas and oil rights after the first year, was to furnish him with gas for three stoves and four lights for his house, and no provision whatever is made for apportioning the consideration between the gas and the oil rights, and the lessor was only to receive gas until a well was drilled. The gas company, not having drilled the well, continued to furnish gas only because it had assigned the oil rights and was bound to carry out its assignment.

The effect of sustaining the decree would be to enjoin the appellants from drilling a well and at the same time would give the appellee the right to receive gas until a well is drilled free of charge. It is insisted in appellee's brief that the oil was not bored for within a reasonable time, and hence he had a right to set aside the lease on that ground. That would be true, but for the fact that he waived it by going on and taking gas under the lease, which the lease provided he might do "until the well was sunk," without making any objection because of the delay.

It is quite true that in equity restitution is not at all events a condition precedent to rescind in the first instance. The plaintiff may offer it in his bill, he may make restitution at the hearing, or restitution may be provided for in the decree; but in this case there is no attempt to make restitution at any time or in any way, and the appellee seeks, not only to hold all that he has got, but to go on taking more, at the very time he seeks to cancel the lease. We think, with counsel who made the oral argument, that this clause of the lease provides the power to rescind in case the lease proved detrimental to the sale of the land for agricultural or other purposes, to which it was then devoted, and that that was in the minds of the parties at the time the lease was executed. It is clearly shown, we think, from the appellee's testimony, that he conceived the notion of taking advantage of this clause only after oil was found on adjacent premises, and he now insists that this clause gives him power to rescind, the effect of which would be to permit him to dispose of the oil rights at a greater advantage. The master in his report says that it is inconceivable that any one should make such a contract as that which he holds these parties did make, and in this view we concur, if this clause of the lease is susceptible of the construction given it by the master. We think, however, that it is not susceptible of that construction, and that the lessor has no right to insist, as suggested by counsel at the argument, upon an interpretation which in common sense is conceded to be inconceivable. We think a more reasonable construction is that if, prior to the boring for oil, the sale of the land as a farm was injured by the lease, the lease should be returned. This view is not inconsistent with the language of the lease, and under the circumstances as disclosed by the record we think it is the only reasonable construction to be placed upon this provision.

Some other questions were discussed in the briefs of counsel, which have all been attentively considered; but, in the view we have taken of this cause, it is not necessary to discuss them.

The decree of the Circuit Court is reversed.