# ROGER B. PARKIN v.
# SHAWN FITZGERALD AND OTHERS.

240 N. W. 2d 828.

March 19, 1976—No. 45446.

Richard J. Fuller, Legal Aid Society, Inc., for appellants.
Richard F. Koch, for respondent.

Heard before Sheran, C. J., and Rogosheske, Peterson, Kelly, and Yetka, JJ., and considered and decided by the court en banc.

KELLY, JUSTICE.

Tenants appeal from a judgment of the Hennepin County Municipal Court granting reentry to their landlord in an unlawful detainer action. We reverse and remand for further proceedings.

On or about March 1, 1974, tenants and landlord entered into an oral lease creating a month-to-month tenancy in a house. The landlord orally agreed at that time to make certain repairs to the house within a reasonable time and rent was set at $290 a month. Tenants thereafter requested certain repairs and notified landlord by mail on July 1, 1974, that they were demanding repair of leaky pipes, the kitchen ceiling, the back porch, and other items, and that they would withhold rent if repairs were not made within 30 days. On July 18, 1974, tenants obtained an inspection of the premises by the Minneapolis Department of Inspections. On July 22, 1974, an officer of that department cited eight violations of the Minneapolis Housing Maintenance Code to landlord.[1] On July 29, 1974, landlord served tenants with a

---

[1] The housing officer ordered the following corrections of conditions he determined to be in violation of the Minneapolis Housing Maintenance Code:

"H2  Put all interior kitchen ceilings, bath floor covering in a work-

formally correct 30-day notice to vacate the premises. On September 10, 1974, landlord brought the instant unlawful detainer action. Tenants had withheld rent for August 1974 and deposited it into court in accordance with the order of the trial judge.[2]

Tenants defended the action on the ground that the attempted eviction was in retaliation for their good-faith activities undertaken to obtain repairs within the meaning of Minn. St. 566.03, subd. 2.[3] Although landlord did not state his reason for evicting tenants, viewing the evidence most favorably to him as the prevailing party reveals the following nonretaliatory bases for the eviction: (1) A rent check received on March 1, 1974, was returned by the bank because of insufficient funds. The check was subsequently paid at an unspecified time. (2) Rent was late on one or two occasions. The only specific example of tardiness cited by landlord was nonpayment for August 1974. As previously indicated, this rent was withheld for alleged failure to make repairs and subsequently paid into court. (3) Tenants owned a dog.

---

manlike state of Maintenance and repair. Sec. 72.030

"H12a   Put all exterior detached rear porch, deck, steps, railings, in a workmanlike state of maintenance and repair. Sec. 72.020

"H12b   Provide handrails as required by the Housing Maintenance Code. Sec. 72.060

"H26   Have a licensed electrician obtain permits, as required, and restore hazardous wiring and fixtures to a safe condition as required by the Housing Maintenance Code. Sec. 7.1030 (Faulty kitchen light)

"H39b   Have a licensed plumber obtain permits, as required, and restore hazardous plumbing to a safe condition as required by the Housing Maintenance Code. Sec. 72.070 (Leaking bath plumbing)

"H49   Provide dead bolt locks as required by Chapter 153 of the Housing Maintenance Code. Sec. 153.045

"H40b   Provide screens to cover required openable windows in each habitable room. Sec. 71.060

"H40a   Provide screens with self-closing devices for all doors opening directly from a dwelling unit or habitable room to the outdoor space. Sec. 71.060"

[2] Fritz v. Warthen, 298 Minn. 54, 61, 213 N. W. 2d 339 (1973).

[3] See, Annotation, 40 A. L. R. 3d 753.

Landlord had complained several times to Shawn Fitzgerald, one of the tenants, about the dog. However, there was apparently no discussion about dogs when the lease was entered into and landlord had made no objection when tenants later informed him that they had acquired a dog. There was no evidence on the record of any damage done to the house by the dog or tenants. There was evidence that landlord discussed with tenants their leaving in July in the context of their demands for repairs, informing them that if they were in a hurry to have the repairs done, they could leave.

At the end of trial, the court stated, "With the absence of a lease, there is nothing to do but make a finding on behalf of the plaintiff." He subsequently filed findings of a month-to-month tenancy, a valid 30-day notice to quit, and substantial completion of repairs requested by tenants. This final finding was supported, at least as to the eight code violations, by a report of a housing official who reinspected the house sometime after August 20, 1974, and found most of the violations corrected. The court made no findings as to the retaliatory or nonretaliatory purpose of the eviction.

■■■ Minn. St. 566.03, subd. 2, the relevant statute, provides:

"It shall be a defense to an action for recovery of premises following the alleged termination of a tenancy by notice to quit for the defendant to prove by a fair preponderance of the evidence that:

"(1) The alleged termination was intended as a penalty for the defendant's good faith attempt to secure or enforce rights under a lease or contract, oral or written, or under the laws of the state, any of its governmental subdivisions, or of the United States; or

"(2) The alleged termination was intended as a penalty for the defendant's good faith report to a governmental authority of the plaintiff's violation of any health, safety, housing or building codes or ordinances.

"If the notice to quit was served within 90 days of the date of

any act of the tenant coming within the terms of clauses (1) or (2) the burden of proving that the notice to quit was not served for a retaliatory purpose shall rest with the plaintiff."

The statute was clearly applicable. (1) Tenants were in possession under an oral lease providing for a month-to-month tenancy. Landlord admitted this. The statute protects an attempt to enforce rights under a "lease or contract, oral or written." Minn. St. 566.03, subd. 2(1). (2) Tenants' request for repairs on July 1 was a good-faith attempt to enforce their rights under subd. 2(1). (3) Tenants' report to the housing inspector on July 18 was a good-faith report to a governmental authority under subd. 2(2). The citation of eight violations amply demonstrates the reasonableness as well as the good faith of the report. (4) Landlord served the notice to quit on July 29, within 90 days of both the request for repairs and the report to the housing inspector. Therefore, landlord had the burden of establishing a nonretaliatory purpose for the eviction. The sole issue in this case is whether he met that burden.

At the outset, it must be noted that the trial court obviously misunderstood this issue, and made no findings as to the purpose of the eviction. The statement of the court that it had to award reentry because there was no lease (apparently meaning no *written* lease, since landlord admitted an oral lease) is clearly erroneous in view of the "written or oral" language in subd. 2(1) and the absence of any such limitation in subd. 2(2). Therefore, this case could be remanded to the trial court for findings as to the purpose of the eviction. However, in view of the remainder of the record, we find this limited disposition is unnecessary.

The instant case affords this court its first opportunity to authoritatively construe our retaliatory eviction statute. The salutary purpose of this legislation is clear. The law provides the tenant with substantial weapons in his day-to-day struggle for decent-quality housing. First, he is protected by an implied statutory covenant of habitability, Minn. St. 504.18, the breach of which by a landlord may justify the tenant's withholding rent

and provide a valid defense to an unlawful detainer action. Fritz v. Warthen, 298 Minn. 54, 213 N. W. 2d 339 (1973). Second, he is protected by local housing codes and regulations which often set down specific housing requirements and are enforced by local administrative officers at no direct cost to him. However, any effective use of these important weapons can be easily curtailed by the simple expedient of the ostensibly neutral, but actually retaliatory, 30-day notice to quit. When the withholding of rent or report to housing authorities brings the inevitable notice, the tenant is forced to put up with substandard or illegal housing conditions or leave. Confronted with this choice in the face of a tight housing market and no better conditions elsewhere, he will too often choose silence and acquiescence, frustrating legislative policies designed to ensure adequate and tenantable housing within the state. Fritz v. Warthen, 298 Minn. 54, 59, 213 N. W. 2d 339, 342.

Recognizing these circumstances, our legislature has chosen to allow the tenant to defend unlawful detainer actions by establishing that eviction was in retaliation for good-faith efforts on his part to enforce contractual or statutory provisions designed for his benefit. There are at least three important aspects of the allowed statutory defense: First, it encompasses a wide range of tenant activity, provided such activity is undertaken in good faith for the purpose of enforcing contractual or statutory rights. Second, it does not require an extraordinary burden of proof, but only the usual civil burden—proof by a fair preponderance of the evidence.[4] Third, recognizing the difficulties of proof of matters of motive and purpose, it aids the tenant with

---

[4] See, in contrast, Dickhut v. Norton, 45 Wis. 2d 389, 173 N. W. 2d 297 (1970), requiring a tenant to prove by clear and convincing evidence that a code violation existed, that the landlord knew of the tenant's report of the violation, and that the landlord sought to terminate the lease for the sole purpose of retaliation. See, also, Toms Point Apartments v. Goudzward, 72 Misc. 2d 629, 632, 339 N. Y. S. 2d 281, 286 (1972), imposing a burden on the tenant to prove five elements, including that the overriding reason for eviction is retaliation.

a presumption of retaliation which the landlord must rebut if the notice to quit was served within 90 days of the tenant's protected activity.

Few reported cases have faced the problem of articulating a standard to define the quantum of evidence necessary to rebut the presumption of retaliatory purpose. In the landmark case of Robinson v. Diamond Housing Corp. 150 App. D. C. 17, 29, 463 F. 2d 853, 865 (1972), the court suggested a "legitimate business purpose" test:

"* * * Once the presumption is established, it is then up to the landlord to rebut it by demonstrating that he is motivated by some *legitimate business purpose* rather than by the illicit motive which would otherwise be presumed." (Italics supplied.)

The court further noted that failure to pay rent would not constitute such a purpose where the leased premises contained substantial housing code violations, and held, under the facts of that case, that even an expressed intention to take the leased property off the rental market did not necessarily constitute such a purpose.

The New Jersey Superior Court approached the problem somewhat differently in construing a retaliatory eviction statute similar to ours in Silberg v. Lipscomb, 117 N. J. Super. 491, 496, 285 A. 2d 86, 88 (1971). The court there stated:

"* * * The landlord can overcome such presumption only upon showing, to the satisfaction of the court, that the decision to evict was reached independent of any consideration of the activities of the tenants protected by the statute."

In Silberg tenants had petitioned the court to appoint an administrator and receive rents to make repairs. Landlord prepared eviction notices the same day the petition was granted. The court applied this "purpose independent of protected activities" test to uphold tenants' defense despite evidence of landlord's intention to subdivide the rented housing units and sell

them as two-family dwellings. Scrutinizing very carefully land-lord's arguments that it would be very difficult and prohibitively expensive to subdivide while tenants were in possession, the court commented:

"However, the important fact is that the landlord did not ac-tually weigh the possibility of performing the work with the tenants in possession. With the decision of the court appointing an administrator, as requested in the tenants' petition, the land-lord decided to evict the tenants without full consideration as to the economic feasibility or necessity of such action. Thus, while the landlord was primarily motivated by economic reason-ing, proper and reasonable insofar as it went, the court is not satisfied that if the tenants had not initiated the original pro-ceedings, further and more complete consideration by the land-lord would have taken place." 117 N. J. Super. 495, 285 A. 2d 88.

Thus, according to the New Jersey Superior Court, even a legiti-mate business purpose must be closely examined to ensure that it is not contrived or colored in any way by tenants' protected activities. Accord, Cornell v. Dimmick, 73 Misc. 2d 384, 342 N. Y. S. 2d 275 (1973).[5]

■ Borrowing in part from the above cases, we adopt the fol-lowing standard for trial courts to use in determining whether a landlord has satisfied his burden of proving a nonretaliatory purpose: A landlord must establish by a fair preponderance of the evidence a substantial nonretaliatory reason for the eviction, arising at or within a reasonably short time before service of the notice to quit. A nonretaliatory reason is a reason wholly unre-lated to and unmotivated by any good-faith activity on the part of the tenant protected by the statute (e. g., nonpayment of rent, other material breach of covenant, continuing damage to premises by tenants, or removal of housing unit from market for a sound business reason). Such a standard will give full pro-

---

[5] For a collection of cases, see, Annotation, 40 A. L. R. 3d 753.

tection to tenants and will enhance the legislative policy of liberal construction of statutory covenants to insure adequate housing. See, Minn. St. 504.18, subd. 3; Fritz v. Warthen, 298 Minn. 54, 213 N. W. 2d 339 (1973).

Applying the standard to the facts in the instant case, we hold that the landlord has completely failed to carry his burden of showing a substantial nonretaliatory purpose. The rent check which was returned because of insufficient funds during March 1974 cannot establish such a purpose. While failure to pay rent might be a sufficient purpose, the record establishes that the check was paid at some indefinite later time. Moreover, any tardiness or other breach in this regard was certainly waived by acceptance of rent and failure to serve a notice to quit for 5 months after receipt of the check. See, Central Union Trust Co. of New York v. Blank, 168 Minn. 312, 210 N. W. 34 (1926). Likewise, the failure to pay rent for August 1974 cannot establish such a purpose because it occurred *after* the July 29 notice to quit and was validly withheld and paid into court pursuant to Fritz v. Warthen, *supra*. Finally, tenants' dog was an insubstantial reason for eviction in view of landlord's prior acquiescence in tenants' ownership of the dog. Furthermore, the sequence of events in the instant case reveals a clear relationship between the notice to quit and landlord's reaction to tenants' protected activities. The notice to quit came within 5 days of the housing inspector's visit and was contemporaneous with discussions between landlord and one of the tenants about the rate of completion of repairs. None of the other alleged reasons was established to arise at or within a reasonably short time before the notice to quit.

Because we hold the eviction to be retaliatory, the judgment of reentry must be reversed. Counsel for the tenants noted that while tenants have vacated landlord's premises, certain sums remain on deposit in municipal court, including the August 1974 rent and an appeal deposit by landlord, pending the outcome of

this appeal. We therefore remand to that court for further proceedings to dispose of those sums.[6]

Reversed and remanded.

---

[6] We intimate no opinion at this time as to whether tenants may claim damages for wrongful eviction in retaliation for statutorily protected activities or as to the measure of such damages. See, Aweeka v. Bonds, 20 Cal. App. 3d 278, 97 Cal. Rptr. 650 (1971); Markese v. Cooper, 70 Misc. 2d 478, 333 N. Y. S. 2d 63 (1972). Contra, 401 Boardwalk Corp. v. Gutzwiller, 82 Misc. 2d 84, 368 N. Y. S. 2d 122 (1975).