Svenn **BORGERSEN,** Appellant,

v.

**CARDIOVASCULAR SYSTEMS, INC.,** Respondent.

No. A06–710.

Court of Appeals of Minnesota.

April 3, 2007.

Daniel E. Warner, Warner Law Office, P.A., Inver Grove Heights, MN, for appellant.

Natalie Wyatt–Brown, Oberman Thompson, & Segal, LLC, Minneapolis, MN, for respondent.

Leslie L. Lienemann, Culberth & Lienemann, LLP, St. Paul, MN, for amicus curiae.

Considered and decided by HUDSON, Presiding Judge; DIETZEN, Judge; and ROSS, Judge.

## OPINION

HUDSON, Judge.

On appeal from summary judgment dismissing his claims for breach of an employment contract and unlawful termination under Minn.Stat. § 181.932, subd. 1(a) (2004), appellant argues that (1) the district court erred by concluding that he did not make a "report" within the meaning of Minn.Stat. § 181.932, subd. 1(a); (2) the parol-evidence rule precluded the district court from considering the cover letter in interpreting the employment agreement because the employment agreement contained an integration clause; and (3) there remain issues of material fact which preclude summary judgment. We affirm in part, reverse in part, and remand.

## FACTS

In December 2002, respondent Cardiovascular Systems, Inc. (CSI) hired appellant Svenn Borgersen as Director of Engineering Analysis and Design. Borgerson's duties included product development, developing test protocols, conducting laboratory testing (known as "bench testing"), and preparing test results. When it offered appellant the job, CSI sent him two documents: a cover letter and an employment agreement. The cover letter reads, in relevant part:

> This letter and the enclosed Employment Agreement summarize our understanding of the terms of your employment and provide you the means to accept our offer as described. Upon acceptance of this offer and your active start of employment, you will become an "at will" employee of [CSI]. This means that you will be free to resign at any time. Likewise, [CSI] will have the right to terminate your employment at any time with or without reason or notice. Acceptance of this offer acknowledges your understanding and acceptance of the "at will" nature of your employment.
>
> . . . .
>
> Please indicate your acceptance of this offer of employment and agreement with the terms described in the enclosed document by signing and returning all enclosed paperwork to the address indicated below.

The cover letter was signed only by the CEO of CSI.

The employment agreement, which was signed by both the CEO of CSI and appellant, states that the employment shall "continue until terminated by either party as provided for hereunder" and lists "with cause," "death," "disability," and "dissolution of the corporation" as possible reasons for termination. In contrast to the "at-will" language in the cover letter, the "with cause" provision of the employment agreement provides as follows:

> Notwithstanding anything contained herein to the contrary, the Corporation,

acting by and through the Board of Directors, shall have the right to immediately terminate Employee's employment under this Agreement for "Cause," which shall mean: (i) the willful and continued failure by Employee to substantially perform Employee's duties with the Corporation; or (ii) the willful engaging by Employee in conduct which is demonstrably and materially in the opinion of the Board injurious to the Corporation, monetarily or otherwise.

The employment agreement also includes an integration clause:

> This agreement embodies the entire agreement and understanding among the parties relative to subject matter hereof and supersedes all prior agreements and understandings relating to such subject matter.

The employment agreement also includes a modification clause, which provides: "This Agreement shall not be modified or amended except by a written instrument signed by the parties."

At all times relevant to this case, CSI was involved in the research, design, development, and eventual sale of a product known as the orbital atherectomy device ("OAD"). The OAD is a gas-powered, mechanical device designed to be used by cardiologists to remove tissue blockages from stents in human arteries and in peripheral arteries and veins. In February 2004, CSI submitted an application to the Food and Drug Administration (FDA) for an Investigational Device Exemption (IDE) to conduct human trials of the OAD. Because bench testing must be conducted on devices such as the OAD before the device is tested on humans, in March 2004,

the FDA requested additional information and "bench testing which demonstrates the possible interaction between [the device] and stents under worst-case conditions."

In April or May 2004, in response to the FDA's request, tests were conducted, which appellant claims resulted in "catastrophic failures" of the device.[1] Appellant argues that the experimental procedures used "were perfectly representative of what was going on with the device to be used in the human body." As a result, appellant was concerned about the safety of the device and reported the results of the experiments to his supervisors at CSI. To one supervisor he said: "Do you know what would happen if this was shown to the FDA? This could kill a patient, could kill an animal." These statements to his supervisors are what appellant believes led to his termination and what he argues constitute a protected "report" under Minn.Stat. § 181.932.

In May 2004, CSI submitted a report on the OAD to the FDA; it did not include information about the initial "catastrophic failures" of the device.

CSI claimed that it was not satisfied with appellant's work, and on approximately May 24, 2004, CSI fired appellant. On July 22, 2004, appellant contacted a compliance officer at the FDA by e-mail to express his concerns about CSI's IDE application and the safety of CSI's device. The e-mail detailed appellant's belief that information regarding the "potentially deadly design and performance aspects of the current device" had "been deliberately withheld" from the FDA.

On October 1, 2004, appellant filed a complaint in the Hennepin County district court alleging that CSI breached the em-

---

**1.** The parties hotly dispute whether the failures were actually failed "bench tests," requiring mandatory reporting to the FDA or, as respondent claims, merely an attempt to *develop* a bench test and thus excluded from the mandatory-reporting requirement. Our holding need not and does not turn on resolution of this dispute. But to quell the furor, we simply refer to the incident as an "experiment" in the remainder of this opinion.

ployment agreement because the agreement provided that he could only be terminated "for cause." Appellant also alleged that CSI violated Minn.Stat. § 181.932, subd. 1(a) by firing him in retaliation for good-faith reports he made with respect to CSI's failure to comply with FDA regulations requiring disclosure of the risks associated with the device.

CSI moved for summary judgment. The district court issued an order granting CSI's motion for summary judgment and dismissing appellant's claims with prejudice. In its order, the district court concluded that the cover letter was part of the employment agreement, that CSI had the right to terminate appellant at will, and that there were no genuine issues of material fact with respect to the breach-of-contract claim. The district court also concluded that appellant had not made a "report" within the meaning of Minn.Stat. § 181.932, subd. 1(a) and, as a matter of law, appellant could not sustain his whistleblower claim. This appeal follows.

The Minnesota Chapter of the National Employment Lawyers Association, writing as *amicus curiae*, submitted a brief arguing that protection under Minn.Stat. § 181.932 is not limited to reports of past acts. It also argues that the district court's decision contravenes the policy of protecting public safety, which underlies the Whistleblower Act.

## ISSUES

I. Did the district court err by granting summary judgment with respect to appellant's whistleblower claim?

II. Did the district court err by granting summary judgment with respect to appellant's breach-of-contract claim?

## ANALYSIS

### I

Appellant argues that the district court erred by concluding that he did not make a

"report" under Minn.Stat. § 181.932, subd. 1(a) (2004) and granting summary judgment in favor of CSI. On appeal from summary judgment, this court "ask[s] two questions: (1) whether there are any genuine issues of material fact and (2) whether the [district] court[ ] erred in [its] application of the law." *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990).

> A motion for summary judgment shall be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that either party is entitled to a judgment as a matter of law. On appeal, the reviewing court must view the evidence in the light most favorable to the party against whom judgment was granted.

*Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993) (citation omitted). No genuine issue for trial exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn.1997) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). When a district court applies statutory language to the undisputed facts of a case, its conclusion is one of law, which this court reviews de novo. *A.J. Chromy Constr. Co. v. Commercial Mech. Servs., Inc.*, 260 N.W.2d 579, 582 (Minn.1977).

Minnesota's whistleblower statute provides that "[a]n employer shall not discharge, discipline, threaten, otherwise discriminate against, or penalize an employee" when the employee, "in good faith, reports a violation or suspected violation of any federal or state law or rule adopted pursuant to law to an employer

or to any governmental body or law enforcement official[.]" Minn.Stat. § 181.932, subd. 1(a).

A prima facie case of retaliatory discharge under Minn.Stat. § 181.932 "requires the employee to demonstrate statutorily protected conduct by the employee, an adverse employment action by the employer, and a causal connection between the two." *Gee v. Minn. State Coll. & Univ.*, 700 N.W.2d 548, 555 (Minn.App. 2005). Whether appellant made a report in "good faith" is a question of fact, "but this court may determine as a matter of law that certain conduct does not constitute a 'report'." *Rothmeier v. Inv. Advisers, Inc.*, 556 N.W.2d 590, 593 (Minn.App. 1996) (citations omitted), *review denied* (Minn. Feb. 26, 1997).

A "report" under Minn.Stat. § 181.932, subd. 1(a) "must 'blow the whistle' by notifying the employer of a violation of law that is a clearly mandated public policy." *Cokley v. City of Otsego*, 623 N.W.2d 625, 631 (Minn.App.2001), *review denied* (Minn. May 15, 2001). *Contra Anderson–Johanningmeier v. Mid–Minnesota Women's Ctr., Inc.*, 637 N.W.2d 270, 277 (Minn.2002) (rejecting public policy requirement of Minn.Stat. § 181.932, subd. 1(a)). Additionally, under Minn.Stat. § 181.932, subd. 1(a) a "report of a suspected violation of federal or state law must implicate an actual federal or state law and not one that does not exist." *Obst v. Microtron, Inc.*, 614 N.W.2d 196, 204 (Minn.2000) ("[T]o say that safety concerns are raised does not satisfy the requirement of the whistle-blower statute, that the employee's reports must implicate a violation or suspected violation of a federal or state law or rule adopted pursuant to law.").

Appellant argues that by failing to include information about the failed experiment in its report to the FDA, CSI violat-ed 21 C.F.R. § 812.36(c)(1)(vii) (2006), which states that an application for an IDE must include "[i]nformation that is relevant to the safety and effectiveness of the device for the intended treatment use." However, the record reveals that at the time appellant reported the results of the experiment to his supervisors at CSI, he did not know whether CSI was going to report those results to the FDA, and he did not have any reason to suspect that it would not. Appellant made a report to CSI, but it was not a report of "a violation or suspected violation of any federal or state law or rule"; he merely expressed his concerns regarding the safety of the device without indicating that he suspected CSI of a violation or an attempted violation of a federal or state law. Minn.Stat. § 181.932, subd. 1(a). Therefore, appellant's statements to his supervisors at CSI do not constitute a "report" under Minn. Stat. § 181.932.

Additionally, we reject both appellant's and *amicus curiae's* argument that the district court erred by concluding that appellant's conduct was not protected by the whistleblower statute because no violation of the law had actually occurred before appellant made his report. They argue that Minn.Stat. § 181.932 applies to *anticipated* violations of law, as well as past violations. They further maintain that the district court's interpretation of the statute contravenes the purpose of whistleblower protections. We need not address appellant's interpretation of the law, because after carefully examining the record, we conclude that the district court did not base its conclusion on when appellant's "report" occurred. Rather, it based its conclusion on whether CSI's conduct was illegal.

Accordingly, we conclude that, as a matter of law, appellant cannot maintain his whistleblower claim. The district court

did not err by granting summary judgment in favor of respondent with respect to appellant's whistleblower claim.

## II

■ Appellant next argues that the district court erred by (1) considering the provisions of both the cover letter and employment agreement when determining the nature of his employment with CSI, concluding that CSI had the right to terminate him at will; and (2) concluding that no genuine issues of material fact exist with respect to his breach-of-contract claim. The district court concluded that the cover letter, which states that appellant's employment was of the "at will" variety, should be read in conjunction with the employment agreement, which states that appellant may only be terminated "for cause." We disagree.

■ "Unless otherwise agreed between the parties, the employment relationship is at-will[.]" *Aberman v. Malden Mills Indus., Inc.*, 414 N.W.2d 769, 771 (Minn.App.1987). "[A]n at-will employee has no claim for wrongful termination or breach of an employment contract once discharged." *Bolander v. Bolander*, 703 N.W.2d 529, 545 (Minn.App.2005), *review dismissed* (Minn. Nov. 15, 2005).

■ Interpretation of a written contract is a question of law, which we review de novo. *Alpha Real Estate v. Delta Dental Plan, Minn.*, 664 N.W.2d 303, 311 (Minn.2003). The parol evidence rule "prohibits the admission of extrinsic evidence of . . . prior written agreements, to explain the meaning of a contract when the parties have reduced their agreement to an unambiguous integrated writing." *Id.* at 312 (quotation omitted). When an agreement between parties is reduced to writing, parol evidence "is ordinarily inadmissible to vary, contradict, or alter the written agreement." *Flynn v. Sawyer*,

272 N.W.2d 904, 907–08 (Minn.1978). Whether an agreement is completely integrated and therefore not subject to variance by parol evidence is an issue of law. *Apple Valley Red–E–Mix v. Mills–Winfield Eng'g Sales, Inc.*, 436 N.W.2d 121, 123 (Minn.App.1989), *review denied* (Minn. Apr. 26, 1989).

Here, the very detailed, six-page employment agreement contains an integration clause, which states plainly that it "embodies the entire agreement and understanding among the parties." The agreement also prohibits modification of its terms by any method other than "by a written instrument signed by the parties." Respondent argues that "[i]t is well settled that where several instruments are executed as part of one transaction, and they are all consistent with each other, they will be read and construed together even if their terms do not refer to each other." *Anda Constr. Co. v. First Fed. Sav. & Loan Ass'n, Duluth,* 349 N.W.2d 275, 278 (Minn. App.1984), *review denied* (Minn. Sept. 5, 1984). However, in this case, the cover letter was not an executed agreement. It was signed by only one party and, furthermore, the "at will" terms of the letter are not consistent with the "for cause" provisions of the employment agreement. Therefore, we conclude that the agreement was fully integrated and meant to represent the entire employment agreement between the parties and that the cover letter is inadmissible extrinsic evidence.

For these reasons, we conclude that the district court erred by considering the cover letter in conjunction with the fully-integrated employment agreement, that issues of material fact remain with respect to appellant's breach-of-contract claim, and that the district court erred as a matter of law by granting summary judgment on this issue.

Affirmed in part, reversed in part, and remanded.