*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0731**

Arrow Southampton, LLC,
Respondent,

vs.

Jeremiah Akinnola,
Appellant.

**Filed February 1, 2016
Affirmed
Chutich, Judge**

Hennepin County District Court
File No.  27-CV-HC-15-1621

Douglas E. Turner, Christopher T. Kalla, Hanbery & Turner, P.A., Minneapolis, Minnesota (for respondent)

Jeremiah Akinnola, Minneapolis, Minnesota (pro se appellant)

Considered and decided by Hooten, Presiding Judge; Ross, Judge; and Chutich, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CHUTICH**, Judge

Appellant Jeremiah Akinnola appeals a housing court judgment ordering his eviction.  Akinnola argues that the housing court erred in determining that (1) respondent Arrow Southampton, LLC, was the proper plaintiff to bring an eviction action; (2) oral

promises to renew Akinnola's lease allegedly made by Southampton's agent before the parties signed the lease did not create a condition precedent; (3) oral promises allegedly made by Southampton's agent after the lease was signed were not enforceable as oral modifications of the lease; (4) Southampton did not waive its right to evict Akinnola by accepting rent; (5) Akinnola's retaliation defense under Minnesota Statutes section 504B.285 (2014) did not apply as a matter of law; and (6) the alleged oral promises were not enforceable by operation of promissory estoppel. Because we conclude that Southampton offered Akinnola the chance to renew his lease and he did not follow up on the offer, we affirm the judgment ordering Akinnola's eviction.

## FACTS

In March 2014, Akinnola signed a lease with Southampton. The facts regarding the lease signing are disputed, but Akinnola alleges that he was very clear with the property manager that he was seeking a lease that was longer than a year because he was moving from Wabasha and could not afford to move without a guarantee that he could stay for longer than a year. Akinnola maintains that the property manager explained to him that Southampton only offers one-year leases because it typically raises rent every year but promised she would offer him a renewal at the end of his term. Akinnola asserts that he explained to her that he would only sign the lease if it could be renewed and that the agreement to renew was a condition precedent to the contract. Southampton filed an affidavit from the property manager, who denied that Akinnola asked for a lease longer than a year and stated that she had not made any promises to him at any time regarding lease renewal.

2

After allegedly receiving an oral promise that his lease would be renewed, Akinnola signed a lease with an original term-end date of March 31, 2015. The lease includes the following provision on lease renewal:

> This Lease may be renewed by written agreement with Owner. If Resident fails to give Owner proper 59 day written notice to terminate the Lease at the end of the Lease term, and Owner has not given Resident notice of lease termination/nonrenewal, then the Lease shall continue as a "month-to-month Lease" but the rent shall increase by the additional month-to-month short-term fee shown on page 1 as the month-to-month fee.

The lease further states that "[t]he Resident agrees that the Owner has made no promises or representations that are not stated in this Lease or any Addendums thereto. This Lease and Addendum may only be changed in writing signed by both the Resident and the Owner." The lease also contains a nonwaiver provision that states: "No waiver of any right or remedy by Owner shall be found by any court without an express written agreement signed by an authorized representative of Owner."

During Akinnola's year as a tenant, he made various complaints to Southampton about what he believed were violations of the parties' lease. In Akinnola's brief, he states that he met with Southampton in December 2014 about a lease violation. In his motion to oppose summary judgment, he stated that his relationship with Southampton deteriorated after he "made complaints that [Southampton] was violating the lease agreement." Akinnola attached a civil complaint from a collateral case to his answer, alleging that between August 2014 and January 2015 he wrote several letters complaining about the presence of large dogs on the property without a leash, despite the property manager's oral promise that Akinnola would not "find anything like that here." Akinnola alleged that dogs

3

almost attacked him on Southampton's property on a few occasions and that Southampton breached the parties' lease by failing to provide safe hallways and a safe apartment unit. The civil complaint itself was not filed until April 15, 2015, well after the notice of nonrenewal in January and after the eventual eviction complaint was filed on April 6.

A letter from Southampton's attorney referred to additional complaints from Akinnola, responding to his assertion that Southampton had a "duty to enter into negotiation or mediation with [him] about [his] various concerns." The letter referred to Akinnola making threats of litigation and to his objections to the contract terms, "including the requirement that rent be delivered or mailed to the corporate office and that late fees are due on the 3rd."[1]

On January 9, 2015, Southampton sent a notice informing Akinnola that it had elected not to renew his lease. He denies receiving this notice but does not allege its absence as a basis for reversal. Following the notice of nonrenewal, however, Akinnola acknowledged receiving two letters from Southampton's attorney. The letters informed Akinnola that his current lease would not be extended or renewed, but if he wanted to enter into a new one-year lease with the same terms and conditions as the old lease, with a

---

[1] As an addendum to his reply brief, Akinnola attached correspondence between himself and Southampton that further explain the complaints he made about the lease, but because it is not part of the record on appeal, it is beyond this court's scope of review. *See* Minn. R. Civ. App. P. 110.01 (noting that the record on appeal consists of "[t]he papers filed in the trial court, the exhibits, and the transcript of the proceedings, if any").

4

monthly rent increase to $980, then he would have to contact the site management office "to complete and sign lease renewal papers by no later than February 28, 2015."[2]

Akinnola did not complete or sign lease-renewal papers by February 28. He testified that he responded to one of Southampton's attorney's letters by saying that he would accept the offer, but that he wanted to meet to discuss a clause in the contract that he did not like. Instead of contacting the office to sign the lease papers as directed, Akinnola "expressed in writing" that he intended to renew the lease and made a rent payment to "indicat[e] his willingness to extend the lease agreement duration." Akinnola asserts that he had an ongoing conversation about renewing the lease with Southampton's attorney, but he never completed or signed Southampton's lease-renewal paperwork. Akinnola asserted at housing court that Southampton "didn't specify the time that it ha[d] to be accepted," although the letter from Southampton's attorney clearly stated that the paperwork needed to be completed by February 28, 2015.

When his original lease term expired on March 31, 2015, Akinnola remained in his apartment. On April 1, Southampton's property manager wrote Akinnola a letter informing him that Southampton would not allow Akinnola to hold over as a month-to-month tenant without signing a lease renewal. The letter further stated that Southampton would not accept his rent payment and would hold it in the office for him to pick up. Finally, the letter informed Akinnola that if he did not vacate his apartment by April 6, Southampton

---

[2] One letter, dated February 19, 2015, was entered into the record as exhibit C. The other letter, dated January 16, 2015, was not entered into evidence, but Akinnola acknowledged at the housing court hearing that the letter existed and that it offered him an opportunity to renew his lease.

would file an eviction action. Akinnola did not leave, and Southampton filed an eviction complaint.

The parties appeared for a summary-judgment hearing with a Hennepin County housing court referee in April 2015. The housing court granted Southampton's motion for summary judgment. The housing court concluded that any oral representations made before the lease was signed were subsumed by the lease by operation of the renewal clause and the clause disclaiming oral promises. The housing court also determined that Southampton was the proper plaintiff, that the lease expired of its own terms, and that Akinnola's retaliation defense did not, as a matter of law, apply to "an action for holding over after the Lease expired of its own terms." Akinnola appeals.

## D E C I S I O N

This court reviews the housing court's summary-judgment decision de novo to determine whether genuine issues of material fact exist and whether the housing court erred in its application of the law. *Ruiz v. 1st Fid. Loan Servicing, LLC,* 829 N.W.2d 53, 56 (Minn. 2013). "In reviewing the record for the existence of a genuine issue of material fact, we view the evidence in the light most favorable to the party against whom summary judgment was granted." *Bjerke v. Johnson*, 742 N.W.2d 660, 664 (Minn. 2007) (quotation omitted). On review from summary judgment, all reasonable inferences favor the nonmoving party. *See City of Minneapolis v. Ames & Fischer Co.*, 724 N.W.2d 749, 756 (Minn. App. 2006) (citing *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn. 1993)).

An eviction action is a summary proceeding intended to adjudicate the limited question of who has a present possessory right to a property. *Deutsche Bank Nat'l Trust*

6

*Co. v. Hanson*, 841 N.W.2d 161, 164 (Minn. App. 2014); *see also* Minn. Stat. § 504B.001, subd. 4 (2014) (defining "eviction" as "a summary court proceeding to remove a tenant or occupant from or otherwise recover possession of real property by the process of law set out in this chapter"). Tenants may raise "defenses and counterclaims that fit within the limited scope of an eviction proceeding." *Deutsche Bank Nat'l. Trust Co.*, 841 N.W.2d at 164.

## I.      Proper Plaintiff

Akinnola argues that Southampton does not have standing to evict him because the lease agreement was signed by Highland Management Group. He contends that Southampton failed to produce evidence that it owned the apartment buildings and therefore its complaint should be dismissed for lack of standing. Akinnola's claims are unavailing.

The relevant statute defines a landlord as "an owner of real property, a contract for deed vendee, receiver, executor, trustee, lessee, agent, or other person directly or indirectly in control of rental property." Minn. Stat § 504B.001, subd. 7 (2014). Genuine issues of material fact must be established by legally sufficient, substantial evidence. *DLH*, *Inc. v. Russ*, 566 N.W.2d 60, 70–71 (Minn. 1997) ("[T]he party resisting summary judgment must do more than rest on mere averments.").

Here, the housing court relied on an admission in Akinnola's answer to find that Southampton was the owner of the property and, therefore, the proper plaintiff. Akinnola defined "plaintiffs" as Highland Management Group and Arrow Southampton, and in the next paragraph, he stated that "[p]laintiffs own and manage apartment buildings located on

7

5445 and 5455 Smetana Drive." Akinnola made the same admission in the complaint he filed in a collateral case, which he attached to his response to Southampton's summary-judgment motion.

In addition, the lease is not with Highland Management Group. The lease names Highland Management Group not as the landlord, but as the "agent authorized to accept services of process and receive and give receipts for notices and demands." While the lease never explicitly names Southampton as the landlord, its name is clearly on the lease as Arrow Southampton, LLC.

In the face of the evidence relied upon by the housing court, including his own admissions, Akinnola offers only his incorrect assertion that the lease is with Highland Management Group. Because Akinnola must do more than make simple averments to avoid summary judgment, this argument is unpersuasive. *See DLH*, 566 N.W.2d at 71.

## II.     Oral Promises before the Lease

Next, Akinnola argues that the property manager's alleged promise to renew his lease was a condition precedent, and accordingly, the parol evidence rule does not bar him from attempting to enforce it. He also argues that even if the promise was not a condition precedent, it should still be admissible because it did not vary the terms of the lease. His argument is unavailing.

"The parol-evidence rule is not a rule of evidence, but a substantive rule of contract interpretation." *Maday v. Grathwohl*, 805 N.W.2d 285, 287 (Minn. App. 2011) (quotation omitted). The rule "prohibits the admission of extrinsic evidence of prior or contemporaneous oral agreements, or prior written agreements, to explain the meaning of

8

a contract when the parties have reduced their agreement to an unambiguous integrated writing." *Id.* (quotation omitted). When parties reduce an agreement to writing, parol evidence "is ordinarily inadmissible to vary, contradict, or alter the written agreement." *Borgersen v. Cardiovascular Sys., Inc.*, 729 N.W.2d 619, 625 (Minn. App. 2007) (quotation omitted). In *Maday v. Grathwohl*, this court concluded that a prior oral agreement was inadmissible when it addressed the same subject matter of the written agreement and was inconsistent with the written agreement. *Maday*, 805 N.W.2d at 288.

"A condition precedent is an event that must occur before a party is required to perform a certain contractual duty." *Minnwest Bank Cent. v. Flagship Properties LLC*, 689 N.W.2d 295, 299 (Minn. App. 2004). Parol evidence is admissible to show agreements regarding conditions precedent, "the theory being that such evidence merely goes to show that the writing never became operative as a valid agreement." *Craigmile v. Sorenson*, 239 Minn. 383, 394, 58 N.W.2d 865, 872–73 (1953) (quotation omitted).

Akinnola's argument is without merit for three reasons. First, although he contends that the property manager's oral promise was a condition precedent, he does not attempt to show that the lease never became operative; he attempts to show that the oral promise is part of the agreement between the parties, in violation of the parol evidence rule. Second, the written lease contradicts the alleged promises. The lease provides that if Southampton gives Akinnola proper notice, the lease can expire at the end of the lease term, while the promises allegedly give Akinnola an absolute right to renew. In addition, the lease states that Southampton had not made any oral promises or representations that are not stated in the lease, which directly contradicts Akinnola's claim of enforceable prior promises.

9

Finally, even if the promises were enforceable, Akinnola cannot show that Southampton did not abide by them. It issued an initial notice of nonrenewal, but soon after told Akinnola that, if he wanted to stay, he needed to contact the management office and fill out the lease renewal paperwork by February 28. This offer conforms to the lease, which provides that all renewals must be in writing. Because Akinnola never completed the lease renewal paperwork after Southampton invited him to do so, he cannot show that Southampton refused to renew his lease.

### III.    Oral Promises after the Lease

Next, Akinnola maintains that the property manager made additional oral promises to renew his lease after it was signed and argues that those promises are enforceable as oral modifications of the lease. On review of summary judgment, this court must believe that the property manager did make an oral promise to renew and that Akinnola relied on that promise, but his arguments are still unpersuasive.

Written contracts "can be varied or rescinded by oral agreement of the parties, even if the contract provides that it shall not be orally varied or rescinded." *Larson v. Hill's Heating & Refrigeration of Bemidji, Inc.*, 400 N.W.2d 777, 781 (Minn. App. 1987), *review denied* (Minn. Apr. 17, 1987). This court has found that "[p]arol evidence of subsequent conversations which alter the terms of a contract may be considered," but "such evidence must be clear and convincing to justify setting aside a written contract and holding it as abandoned or substituted by a subsequent parol contract at variance with its terms." *Norwest Bank Minn., N.A. v. Midwestern Mach. Co*., 481 N.W.2d 875, 881 (Minn. App. 1992), *review denied* (Minn. May 15, 1992). The *Norwest Bank* court also held that later

10

assurances of an alleged parol agreement altering the terms of a contract were not separate agreements, but reaffirmations of the original alleged agreement. *Id.* at 881.

Here, the oral promise made after the lease was signed was the same as the promises made before the lease was signed. Akinnola argues that the jury should have been able to decide whether clear and convincing evidence justifies setting aside the written contract. But, under *Norwest Bank*, Akinnola's argument fails as a matter of law because even if the property manager made additional promises to renew after the lease was signed, they were reassurances of the original alleged promise.

## IV.    Waiver

Akinnola argues that Southampton accepted his payment of rent for March 2015, and, in doing so, waived its right to evict. We disagree.

"Waiver has historically been an affirmative defense to an eviction action." *Oak Glen of Edina v. Brewington*, 642 N.W.2d 481, 486 (Minn. App. 2002). "A principal reason for the waiver rule is to instill a feeling of repose in the tenant; the landlord, by accepting the rent, effectively reaffirms the lease between parties." *Id.* "Acceptance of rent operates as an election by the lessor to continue the lease." *Priordale Mall Inv'rs v. Farrington*, 411 N.W.2d 582, 584 (Minn. App. 1987), *review denied* (Minn. Sept. 24, 1986). "Waiver is ordinarily a question of fact for a jury, unless only one inference may be drawn from the facts." *Pollard v. Southdale Gardens of Edina Condo. Ass'n*, 698 N.W.2d 449, 453 (Minn. App. 2005).

This court has recognized that acceptance of rent may not be a waiver of breach if the lease contains a nonwaiver provision or when manifest intent to waive is not present.

*Brewington*, 642 N.W.2d at 487; *Minneapolis Cmty. Dev. Agency v. Powell*, 352 N.W.2d 532, 534 (Minn. App. 1984) (finding that nonwaiver clauses are not per se unconscionable or void as against public policy). But "[b]ecause a nonwaiver clause may be modified by subsequent conduct, the mere presence of a nonwaiver clause does not automatically bar a waiver claim." *Pollard*, 698 N.W.2d at 453.

The record here shows that only one inference may be drawn from the facts. First, the parties' lease has a nonwaiver clause, providing that "[a]cceptance of rent does not waive Owner's right to evict Resident for any past or existing violation of any term of this lease." The lease also states that "[n]o waiver of any right or remedy by Owner shall be found by any court without an express written agreement signed by an authorized representative of Owner." Although the nonwaiver clause is not dispositive under Minnesota law, Akinnola did not allege a history of conduct to support a modification of the clause by conduct, as in *Pollard.* 698 N.W.2d at 453–54 (finding modification of nonwaiver clause by conduct when a landlord failed to enforce a rule for 12 years and encouraged violation of the rule).

Because there is no record of a history of conduct between the parties modifying the nonwaiver clause and no manifest intent to waive, we conclude that even if Southampton accepted Akinnola's rent payment, the nonwaiver lease provision controls. Accordingly, the housing court did not err in finding that the only reasonable inference from the facts is that Southampton did not waive its right to evict Akinnola.

## V.    Promissory Estoppel

Akinnola also contends that the doctrine of promissory estoppel prevents Southampton from withdrawing its promise to renew his lease.  We disagree.

"Promissory estoppel is an equitable doctrine that implies a contract in law where none exists in fact." *Greuling v. Wells Fargo Home Mortg., Inc*., 690 N.W.2d 757, 761 (Minn. App. 2005).  "Promissory estoppel has three elements: (1) a clear and definite promise; (2) the promisor intended to induce reliance and such reliance occurred; and (3) the promise must be enforced to prevent injustice." *Id.*  When the facts are taken as true, such as on review of a summary-judgment motion, "it is a question of law as to whether they rise to the level of promissory estoppel." *Id.*  "[A]n express contract covering the same subject matter will preclude the application of promissory estoppel." *Id.*

Here, the parties have an express contract that governs the renewal of the lease, which precludes the application of promissory estoppel.  In addition, Southampton instructed Akinnola to apply for another lease by a specific date if he wanted to stay, and he declined to do so.  Given those facts, Akinnola cannot satisfy the third prong of the promissory-estoppel test: that the promise must be enforced to prevent injustice.

## VI.    Retaliation Defense

Finally, Akinnola argues that the housing court erred in deciding, as a matter of law, that the statutory retaliation defense does not apply to a landlord's decision not to renew a lease.  While we conclude that the law is not settled on whether the statutory retaliation defense applies to a notice of nonrenewal, we decline to address that issue because Akinnola cannot demonstrate retaliation here.

13

A landlord may not terminate a lease in retaliation for a tenant's good-faith attempts to secure or enforce his or her rights under the lease or relevant law. Minn. Stat. § 504B.285, subd. 2(1) (2014). The statutory retaliatory eviction defense applies "to an action for recovery of premises following the alleged termination of a tenancy by notice to quit." *Cloverdale Foods of Minn., Inc. v. Pioneer Snacks*, 580 N.W.2d 46, 51 (Minn. App. 1998). The purpose of the retaliatory-eviction defense is to give effect to the "substantial weapons" the law provides for the "day-to-day struggle for decent-quality housing." *Parkin v. Fitzgerald*, 307 Minn. 423, 427, 240 N.W.2d 828, 831 (1976). The *Parkin* court noted that without a retaliatory eviction defense, the tenant may be forced to "put up with substandard or illegal housing conditions or leave," *id.*, and noted that requiring landlords to prove non-retaliatory reasons for evictions presumed to be retaliatory "will give full protection to tenants and will enhance the legislative policy of liberal construction of statutory covenants to insure adequate housing." *Id.* at 832–33.

If a notice to quit is served within 90 days after a tenant's attempt to secure or enforce lease rights, the landlord must show by a fair preponderance of the evidence that the termination was not retaliatory. Minn. Stat. § 504B.285, subd. 2. Akinnola argues that the retaliation defense applies because he was served a notice of nonrenewal, and later an eviction notice, following his good-faith attempt to assert his rights under the law and the parties' lease. He argues that the notice of nonrenewal terminated his tenancy, just as the statute requires, because the lease did not expire on its own terms. According to the lease, if Southampton had not sent him a notice of nonrenewal, it would have continued as a month-to-month lease.

14

"Notice to quit" is not defined by statute. *See* Minn. Stat. § 504B.001 (2014) (defining terms in landlord and tenant statutes). No published caselaw addresses whether notices to quit under the anti-retaliation statute include notices of nonrenewal.[3] We decline to address the question here because even if Akinnola can demonstrate that the January 9 notice of nonrenewal was in retaliation for Akinnola's good-faith attempt to assert his rights, he was later given a chance to renew and he did not follow through. Akinnola cannot claim that Southampton retaliated against him by refusing to renew his lease when, in fact, he declined to accept Southampton's lease terms and did not pursue a lease renewal as Southampton directed.

Because we determine that Southampton offered Akinnola the opportunity to sign lease renewal papers and he did not accept that opportunity, we conclude that his arguments are without merit. We affirm the housing-court judgment ordering his eviction.

**Affirmed.**

---

[3] This court considered the question in an unpublished decision in 2003 and determined that because the plaintiff had also alleged retaliatory action under Minn. Stat. § 504B.441, which is not predicated on a notice to quit, it was "unnecessary to determine whether a notice to quit includes a notice of nonrenewal." *Dominium Mgmt. Servs., Inc. v. C.L.*, 2003 WL 22890386, at *2 (Minn. App. Dec. 9, 2003), *review denied* (Minn. Feb. 25, 2004).