TERENCE KENNY v. SEU SI LUN and Others.[1]

June 7, 1907.

Nos. 15,094—(62).

**Landlord—Waiver of Forfeiture.**

The receipt of rent by that name, accruing after the occurrence of causes of forfeiture under the terms of a lease for a definite term, to the knowledge of the lessor, bars his right of entry for condition broken

**Return Day of Summons.**

A summons in forcible entry and unlawful detainer proceedings in the municipal court of St. Paul is returnable on the first day of a regular weekly term, being not less than three nor more than ten days from the date of its issuance.

Action in forcible entry and unlawful detainer in the municipal court of St. Paul to recover possession of premises held under a written lease. The case was tried before Hanft, J., who found in favor of plaintiff. From a judgment entered pursuant to the findings, defendants appealed. Reversed.

The plaintiff's and respondent's grantor had executed a written lease, dated August 1, 1904, of certain premises to the defendants and appellants for a term of five years, unless sooner terminated, for an agreed rental payable in equal instalments, in advance, of $65 per month. The lessees had "the full privilege at or before the end of the term of this lease to remove all fixtures and trade appliances which they shall have placed in said building." The material covenants were as follows:

[1]Reported in 112 N. W. 220.

"The lessees  *  *  *  covenant  *  *  *  that they  *  *  *  will not do or suffer any waste or nuisance upon the demised premises, or injure, overload, or deface the same in any way,  *  *  *  and will not make nor allow any unlawful, improper, or offensive use thereof, or any transaction or occupation contrary to any law of said state, or to any by-laws, ordinances, or rules of said city, or of any department of either, now or hereafter made.  *  *  *"

The lease also provided

"That, if the lessee do or shall neglect or fail to perform and observe any of the covenants contained in this instrument,  *  *  *  the lessor  *  *  *  lawfully may immediately or at any time thereafter, and without further notice or demand, enter into  *  *  *  and repossess the same,  *  *  *  and that upon entry as aforesaid this lease shall be determined;  *  *  *  that, notwithstanding the termination of this lease and possession regained by the lessor,  *  *  *  the lessee will on and after such termination, and so long as the demised premises have not been relet, pay to the lessor, at the times and in the proportions herein named for the payment of rent, a sum equal to the rent and other payments herein named as liquidated damages for so much of the unexpired term as expires with each such payment.  *  *  *"

On April 25, 1906, the plaintiff, as the owner of the property, served a notice on the defendants that they should vacate the premises on the 31st day of May, 1906, and that the said lease "has been and is hereby canceled, on the ground that its provisions have been violated by you."

On or about May 3, 1906, plaintiff in person went upon said premises and duly demanded and collected the monthly rent of $65 for the month of May, 1906, and signed a receipt in that sum for rent of the premises for the month ending May 31, 1906.

In June of that year an action for forcible entry and unlawful detainer, initiated by the plaintiff against the defendants, was brought on for hearing. The court found the facts as above stated, and that on and between the 5th and 10th days of April, 1906, the lessees sold opium on said premises, and created and maintained a nuisance thereon in the month of April, 1906. As conclusions of law the court found that the plaintiff was entitled to possession of the premises. From the judgment entered thereon defendants took this appeal.

*Herbert P. Keller, William W. Cutler,* and *C. D. O'Brien,* for appellants.

*Harris Richardson* and *Harold C. Kerr,* for respondent.

JAGGARD, J. (after stating the facts as above).

1. The essential question on the merits here presented is whether the plaintiff is precluded from asserting the alleged grounds of forfeiture. It is to be noted that this was not a tenancy at will, and that notice to the lessee was not a condition precedent to the right of the landlord to re-enter, either under the terms of the lease or under the general law. The notice in question, whether drawn in accordance with the statutory notice to terminate a tenancy at will (R. L. 1905, § 3332) or not, purported to cancel the lease, but did not demand immediate possession. It attempted to declare a present forfeiture operative in futuro. Plaintiff's argument, however, suggests that its form was occasioned by the provision in the lease giving the lessee the right to remove the fixtures and trade appliances.

The right of the tenant for a definite term to remove fixtures within a reasonable time after the expiration of his lease was enforced in Smith v. Park, 31 Minn. 70, 16 N. W. 490. Erickson v. Jones, 37 Minn. 459, 35 N. W. 267, to which we are referred, involved a tenancy at will. In Conner v. Jones, 28 Cal. 60, the lease allowing the tenant to remove fixtures provided expressly for thirty days' notice. None of these authorities, nor any others which we have been able to find, requires the landlord to determine in advance what would be a reasonable time within which to remove fixtures in accordance with the terms of the lease, or to take care of the tenant in that regard by giving him notice accordingly. Upon rendering judgment in forcible entry proceedings the court might well make provision, in accordance with current practice, for the exercise of the tenant's right to remove his fixtures within a reasonable time.

Plaintiff also insists that the payment and receipt of rent for the month of May following this notice was not conclusive of intention to waive the causes of forfeiture referred to in it; that waiver is always a question of intention; that here it was a question of fact whether the lessor intended to waive such causes; and that, inasmuch as the trial court's findings of fact were for the plaintiff, the defendants cannot

here prevail. The authorities to which we are referred in this connection, to the effect that waiver generally is a question of fact as to the intention of the parties, have no relevancy. Other authorities cited by defendant hold more specifically that, under the circumstances there presented, "the question therefore is, quo animo the rent was received, and what the real intention of both parties was." Doe v. Batten, Cowp. 243.

All of these cases are distinguishable from the present, and most of them clearly. In Jones' Devisees v. Roberts, 3 Hen. & M. 436, inter alia, it was a question whether the lessor knew of the breach of covenants committed at the time of receipt of rent. In Blyth v. Dennett, 16 Eng. L. & Eq. 424, the rule was laid down that payment and acceptance of rent after the expiration of notice to quit amounts to waiver of notice, but that the mere demand for rent did not necessarily have that effect. So in Manice v. Millen, 26 Barb. 41, the general rule that acceptance of rent waives prior and known breaches of conditions of the lease was accepted; but it was held that there "the acts of the parties operated to postpone the cause of action by their mutual consent." Many of the other authorities to which we are referred held that, in the language of Taylor, L. & T. § 497, "neither will the receipt of rent after a landlord has actually commenced his action of ejectment for the forfeiture * * * amount to a waiver." See Doe v. Meux, 1 C. & P. 346; Doe v. Brindley, 4 B. & Ad. 84; Jones v. Carter, 15 M. & W. 718; Cleve v. Mazzoni, 19 Ky. L. R. 2001, 45 S. W. 88; Importers & Traders Ins. Co. v. Christie, 28 N. Y. Super. Ct. 169. Doe v. Batten, supra, previously referred to, was also such a case. Stedman v. McIntosh, 27 N. C. 571, recognizes this as the rule, and points out that there and in Doe v. Batten, supra, "the money recovered by the plaintiff in his warrant was for use and occupation, as in the anonymous case [there referred to]. The money here was not recovered as rent eo nomine, but for damages for the use and occupation of the premises. * * *" The money paid could not have been received as rent, because it would not have been due until a later time, and the sum was different. "The money was not demanded and paid as rent, properly speaking, but as damages for holding over."

None of plaintiff's authorities contradict the elementary rule that the debtor who pays money ordinarily determines the conditions upon

which it is received. The general principle is certain that money tendered by the tenant and received by the landlord as rent is paid as rent, and operates to bar the landlord from asserting against the tenant past causes of forfeiture under the terms of the lease which were known to him at the time of such payment. It is not material to here determine whether such payment of rent accruing after breach operates as a waiver of past causes of forfeiture, or as an election by the lessee to continue the tenancy. The effect of either view is to toll the landlord's right to re-entry. This rule itself is as ancient as it is current. In Coke, Littleton (1st Am. from the 19th London Ed.) 211b, § 341, it is said: If "the feoffer had distrained for the rent for the nonpayment whereof the condition was broken, he should never enter for the condition broken; but he may receive that rent and acquite the same, and yet enter for the condition broken. But if he accept a rent due at a day after, he shall not enter for the condition broken, because he thereby affirmeth the lease to have a continuance." So in Green's Case (24 Eliz.) 1 Croke, 3, "it was clearly resolved that the bare receipt of the rent after the day was no bar, for it was a duty due to him (the landlord); but a distress for the rent, or a receipt of the rent, due at another day was a bar; for those acts do affirm the lessee to have lawful possession." And see Pannant's Case, 3 Coke, 64a; Ward v. Day, 10 L. T. (N. S.) 578.

The principle has been enforced in a great number of instances, with little variation save in terminology, and usually in the language of cases of waiver, rather than of election. The American and English cases on the subject will be found collected in 24 Cyc. 1361, 1362, and 18 Am. & Eng. Enc. (2d Ed.) 365. And see 32 Cent. Dig. col. 381, § 345.

This is the law in this state. In Gluck v. Elkan, 36 Minn. 80, 30 N. W. 446, this court held, per Dickinson, J., that "conditions of a continuing nature in a lease are waived, by the acceptance of rent by the landlord, only as to past breaches. The landlord is not thereby precluded from taking advantage of the forfeiture resulting from a subsequent or continued breach." Arcade Investment Co. v. Gieriet, 99 Minn. 277, 109 N. W. 250, is not inconsistent. In that case the landlord, subsequent to giving the notice to quit, agreed to allow the defendant, a tenant at will, to remain in possession of the property. The only question there determined was whether the charge of the trial

court adequately referred to the legal effect of conflicting testimony as to the arrangement made between the landlord and tenant, and to his consequent waiver of the notice previously given.

The rule that receipt of rent bars previously known breaches of the conditions of the lease has been applied in cases in which the landlord expressly refused to accept payment as rent when the tenant tendered it as such. In Croft v. Lumley, 6 H. L. C. 672, Baron Channell said: "The party paying money had, in my judgment, a clear right to appropriate it. He distinctly paid the money as rent. He refused to pay it otherwise than as rent. Mr. Martelli (the landlord) refused in language to receive it as rent; but he did take it. What he did, not what he said, was in my humble opinion the all-important matter. He should have declined to take the money at all, if he meant to elect to proceed for a forfeiture." Griffin v. Tomkins, 42 L. T. (N. S.) 359. And see Davenport v. Queen, 3 App. Cas. 115; 18 Am. & Eng. Enc. (2d Ed.) 386, note 4.

In the case at bar, the lessor did not dispute that he received the amount paid as rent. It appears, on the contrary, that the amount was not only paid as rent, but that he positively and affirmatively accepted it expressly as such. Plaintiff, however, contends that the natural effect of such payment and receipt is prevented because of the provision in the lease that after its termination the lessee should pay for the demised premises, not having been relet, in the proportions named for the payment of rent. The lease provides that such payments shall be "as liquidated damages." Defendant's own receipt shows that the amount paid was received, not as liquidated damages, but "for rent of store." The conclusion is inevitable that the plaintiff is precluded from asserting his right to entry against his tenant, based upon causes of forfeiture known at the time of the receipt of rent.

2. A number of questions based on technical objections are presented by the record. In view of the decision reached, we refer here to only one of these objections, because of the immediate importance of its subject-matter. The summons in this case was issued by the clerk of the municipal court on June 14. The regular term days of that court, immediately subsequent to the date of issuance, were June 19 and 26. If the summons had been made returnable on June 19, service could not have been made by leaving it at the place of defendant's abode six

days before the return day, under R. L. 1905, § 4041. It was accordingly made returnable on June 26. The question then arises whether this was the proper return day. The statutory provisions on the subject are neither clear nor consistent. Section 21, c. 351, p. 999, of the Special Laws of 1889, now a part of the St. Paul charter (chapter 20, § 21), provides that the time within which any act is to be done shall be one-half the statutory period prescribed in the district court proceedings. If this provision alone governed, the time for answering would be ten days. There are, however, other relevant provisions which must be considered together. Subdivision 5 of that section of the Special Laws of 1889, being section 619 of the St. Paul Charter, provides that "the practice * * * shall be the same as in justice's court, except that the summons shall be issued by the clerk and be made returnable on the first day of a regular term." This section is mandatory. Watier v. Buth, 87 Minn. 205, 91 N. W. 756, 92 N. W. 331. Section 4040, R. L. 1905, pertaining to forcible entry and unlawful detainer proceedings in the justice court, requires that the summons shall command the defendant to appear on the day named, "which shall not be less than three nor more than ten days from the day of issuing the same."

The subject is not without grave doubt, especially in view of the propriety of allowing a judge of the municipal court to determine its own practice. Whatever conclusion be reached, some violence will be done to these inconsistent provisions. They should be construed so as to effectuate legislative intent, so as to result in a rule which will work well in practice, and so as to secure to the landlord the prompt relief which statutes providing for a proceeding of forcible entry and unlawful detainer are historically designed to provide. As thus construed, the general direction that the time within which any act is to be done shall be one-half of the statutory period prescribed in the district court proceedings is held to apply only to cases in which time is not otherwise specified. The return day of a summons is specifically prescribed as not being any less than three nor more than ten days from the date of issuance. Construing this in connection with section 619 of the St. Paul charter, the rule results that the summons must be returnable on the first day of the next regular weekly term of that court, not less than three nor more than ten days from the date of its issuance.

Judgment reversed.