**OAK GLEN OF EDINA, Respondent,**

v.

**Tracey BREWINGTON, Appellant.**

**No. C8–01–1296.**

Court of Appeals of Minnesota.

April 23, 2002.

Michael T. Kallas, Anne D. Byrne, Kallas & Macdonald LTD, Edina, for respondent.

Sherry A. Bruckner, Paul R. Birnberg, HOME Line, Minneapolis, for appellant.

Considered and decided by TOUSSAINT, Presiding Judge, LANSING, Judge, and PORITSKY, Judge.[*]

## OPINION

LANSING, Judge.

The district court issued an order for the restitution of premises rented under a Section 8 lease, based on the tenant's repeated failure to pay rent timely. Because the landlord failed to demonstrate the other preconditions necessary for eviction based on repeated minor violations and continued to accept rent payments for six months after the last late rent payment, the landlord failed to establish the material noncompliance necessary to terminate the tenancy and waived its right to evict. We therefore reverse and remand to the district court for determination of the landlord's alternative grounds for eviction.

## FACTS

Tracey Brewington and her three daughters are tenants in federally subsidized rental housing located on Oak Glen Road in Edina. Oak Glen of Edina operates the project-based Section 8 housing complex under mandatory guidelines for participants in the Section 8 housing-assis-

[*] Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

tance program. *See* 42 U.S.C. § 1437f (1994 & Supp. V 1999); 24 C.F.R. § 247.3 (2001). Under the guidelines, Brewington pays a portion of the rent, based on a percentage of her income, and the Department of Housing and Urban Development (HUD) pays the balance.

During her nearly five-year tenancy, Brewington has made seventeen late rental payments and has had one rent check returned for insufficient funds. Under a permissive section of the HUD-approved lease, Oak Glen imposes a late fee of one dollar each day that the payment is late. Brewington has always paid her rent in the month it was due. Each time Oak Glen accepted a late payment from Brewington, it charged and accepted the one-dollar-per-day late fee. Brewington made her last late payment on November 7, 2000. From December 2000 until May 2001, Oak Glen each month accepted timely rental payments from Brewington.

In July of 2001, Oak Glen filed an eviction action against Brewington, alleging nine separate breaches of the lease, including failure to pay rent timely. Brewington unsuccessfully moved to dismiss the action and to exclude evidence prior to the acceptance of the May rent. Following an abbreviated hearing, the district court found that Brewington breached her lease through repeated late payments of rent. The district court made no findings on the other alleged breaches of the lease.

On appeal, Brewington argues that: (1) repeated late payment of rent does not meet HUD's "material non-compliance" standard necessary to evict a Section 8 tenant, (2) Oak Glen waived its right to evict for repeated late payment of rent when it accepted rent after the alleged breaches occurred, (3) the election-of-remedies doctrine bars the eviction action after acceptance of late fees assessed on the overdue rental payments, and (4) Oak Glen

modified the lease to allow for late payment of rent by repeatedly accepting late rent payments without providing notice that further late payments would result in eviction.

## ISSUES

I. Did Oak Glen establish that Brewington's late payment of rent amounted to material noncompliance as required by HUD regulations?

II. Did Oak Glen waive its right to evict Brewington by accepting rent after the alleged breaches of her lease occurred?

III. Did Oak Glen's acceptance of the late fees constitute an election of remedies or a modification of the lease?

## ANALYSIS

■■■ A landlord is entitled to recover possession by eviction when a tenant holds over "contrary to the conditions or covenants of the lease or agreement under which that person holds." Minn.Stat. § 504B.285, subd. 1(2) (2000). Federal law governing subsidized housing "is superimposed upon and consciously interdependent with the substructure of local law relating to housing." *Kargman v. Sullivan*, 552 F.2d 2, 11 (1st Cir.1977). The Section 8 housing-assistance program, established by the Housing and Community Development Act of 1974, and codified at 42 U.S.C. § 1437f, imposes specific requirements for termination of a Section 8 tenancy. 42 U.S.C. § 1437f(*o*)(7)(C) (landlord shall not terminate the tenancy except for serious or repeated violations); 42 § 1437f(*o*)(7)(E) (any termination of tenancy must be preceded by written notice specifying the grounds for termination). State law may impose on landlords more stringent standards for notice and termi-

nation so long as the standards are consistent with federal law and no less stringent. *See Soliman v. Cepeda,* 269 N.J.Super. 151, 634 A.2d 1057, 1061 (Law Div.1993); *Attorney Gen. v. Brown,* 400 Mass. 826, 511 N.E.2d 1103, 1106–07 (1987).

## I

■ United States Department of Housing and Urban Development regulations administering section 1437f provide mandatory guidelines for participants in the Section 8 housing-assistance program. *See Dep't of Hous. & Urban Dev. v. Rucker,* —— U.S. ——, 122 S.Ct. 1230, —— L.Ed.2d —— (2002) (regulations administering section 1437 govern lease terms authorizing eviction). Under 24 C.F.R. § 247.3 (2001), a landlord may terminate a tenancy in a subsidized project for material noncompliance with the rental agreement. Material noncompliance is defined as:

(1) One or more substantial violations of the rental agreement;

(2) Repeated minor violations of the rental agreement that;

    (i) Disrupt the livability of the project,

    (ii) Adversely affect the health or safety of any person or the right of any tenant to the quiet enjoyment of the leased premises and related project facilities,

    (iii) Interfere with the management of the project, or

    (iv) Have an adverse financial effect on the project;

    * * *

(4) Non-payment of rent or any other financial obligation due under the rental agreement (including any portion thereof) beyond any grace period permitted under State law, *except that the payment of rent or*

*any other financial obligation due under the rental agreement after the due date, but within the grace period permitted under State law, constitutes a minor violation.*

24 C.F.R. § 247.3(c) (emphasis added).

■ It is undisputed that Brewington was late in paying her rent seventeen times before November 7, 2000, and that after November 7, 2000 and before serving the eviction action in May 2001, Oak Glen accepted Brewington's timely rent payments six times. Nonpayment of rent beyond a grace period permitted under state law constitutes material noncompliance that justifies terminating the tenancy. At the time Oak Glen brought the eviction action, Brewington was not in arrears on any rental payment. Payment of rent after the due date "within the grace period permitted under state law" is, however, considered a minor violation which, if repeated, and, if it satisfies one of the four preconditions listed, provides a basis for terminating the tenancy under subsection 2.

Minnesota statutes do not use the term "grace period," and the federal regulations do not provide a definition. "Grace period" generally refers to "[A] period of extra time allowed for taking some required action (such as making payment) without incurring the usual penalty for being late." *Black's Law Dictionary* 705 (7th ed.1999). Brewington contends that the "grace period" referred to in the regulations parallels the ability of the tenant to reinstate the tenancy after an eviction proceeding has been initiated. *See* Minn.Stat. § 504B.285, subd. 5(c) (2000) (giving tenant up to seven days to submit payment after judicial determination that rent is owing to landlord if lease not otherwise materially breached).

This argument on what constitutes a grace period comports with parallel provisions of landlord-tenant law that allow a

tenant involved in an action for eviction based only on nonpayment of rent to redeem the tenancy by submitting specified payments before possession has been returned to the landlord. Minn.Stat. § 504B.291, subd. 1 (2000). If redemption by submitting payment in full allows a tenant to remain in possession so long as the landlord does not have possession, it follows that submitting full payment *before* an eviction action has even begun, as occurred in this situation, would be deemed to fall within a grace period under state law. Therefore, Brewington's failure to pay rent timely constitutes a minor violation of the rental agreement.

To evict a tenant for minor violations, the landlord must first show that the actions were repeated. Brewington does not dispute that the late payments were repeated violations. The landlord must also, however, satisfy one of the four preconditions listed in 24 C.F.R. § 247.3(2): that the late payments disrupted the livability of the project, adversely affected the health or safety of any person or the right of any tenant to the quiet enjoyment of the leased premises, interfered with the management of the project, or had an adverse financial effect on the project. 24 C.F.R. § 247.3(2)(i)–(iv).

Oak Glen provided no evidence that the late payments of rent affected its rental business in any manner listed in 24 C.F.R. § 247.3. Although an inference might arise that late payments have an adverse financial effect on the project, Brewington points out that her late fees amounted to 5.5% of her monthly rent, an amount that exceeds what Oak Glen could currently obtain from an interest bearing account. Oak Glen counters that administrative

costs must be offset from this computation. These arguments were not presented in the district court, and the court made no finding that one of the four preconditions was satisfied. *See Chancellor Manor v. Thibodeaux*, 628 N.W.2d 193 (Minn.App. 2001) (district court must make specific findings on issue of material noncompliance with lease terms).

## II

Brewington alternatively contends that even if Oak Glen had demonstrated that the repeated minor violations constitute material noncompliance, it waived its right to proceed on that basis when it accepted her timely rent payments for six months after the last untimely payment. We agree.

Waiver has historically been an affirmative defense to an unlawful detainer action. *Kenny v. Seu Si Lun*, 101 Minn. 253, 257, 112 N.W. 220, 221 (1907); *Priordale Mall Investors v. Farrington*, 411 N.W.2d 582, 583 (Minn.App.1987). Generally, a landlord who accepted rent while knowing that breaches of the lease have occurred waived the right to rely on those breaches in an action for unlawful detainer. *Priordale Mall*, 411 N.W.2d at 584. A principal reason for the waiver rule is to instill a feeling of repose in the tenant; the landlord, by accepting the rent, effectively reaffirms the lease between parties. *Id.* In other words, the waiver rule provides a sense of security for the tenant that the lease remained in effect.[1]

It is undisputed that, until June 2001, Oak Glen accepted timely rent payments from Brewington, knowing that her last late payment had occurred November 7, 2000. By accepting her timely payment of

---

1. Minn.Stat. §§ 504B.281–.371, referring to eviction actions, replaced prior Minnesota law dealing with unlawful detainer actions in 1999. 1999 Minn. Laws ch. 199. Prior case law dealing with the principles of waiver, however, still applies under the reorganized statute.

rent six times following the last late payment, Oak Glen manifested an intent not to evict Brewington for late rent payments.

■ Oak Glen acknowledges accepting rent until June 2001, but maintains that waiver should not apply when a breach is based on a series of violations. Minnesota does recognize exceptions to the general-waiver rule. *See Central Union Trust Co. of New York v. Blank,* 168 Minn. 312, 316, 210 N.W. 34, 36 (1926) (holding that waiver rule does not apply if violated lease provision is part of consideration for the lease); *Minneapolis Cmty. Dev. Agency v. Powell,* 352 N.W.2d 532, 534 (Minn.App.1984) (recognizing that acceptance of rent does not constitute waiver of breach if lease contains nonwaiver provision or when manifest intent to waive is not present). Oak Glen contends that if waiver is applied to this serial violation, a landlord would need to stop collecting rent at the first instance of a late rental payment in order to preserve a cause of action; landlords would then be forced to stop collecting rent for an indeterminate length of time to ascertain whether the tenant's late payment was an isolated or repeated incident. Oak Glen points to an unpublished opinion of this court that held that the waiver rule did not apply when an accumulation of violations was required to justify eviction. *Bossen Terrace v. Price,* Nos. C5–98–434, C1–98–480, 1998 WL 695029 (Minn.App. Oct.6, 1998). The factually distinguishable violations in *Bossen,* however, constituted assaults and disorderly conduct, which necessitated police action.

■ The theory of waiver that Brewington advances flows not from the acceptance of each late payment per se but from the pattern of continuing to accept rent after the last breach of that type—specifically, the last late payment of rent. To protect against waiver for this repeated minor violation, the landlord need only refuse to accept the single, final late rental payment. This allows a reasonable balance between the tenant's reliance on continued tenancy and a landlord's right to remove the tenant for repeated late payments. Applying the waiver doctrine in this way also comports with established case law. *See Kenny,* 101 Minn. at 257, 112 N.W. at 222 (stating that acceptance of rent does not bar landlord from taking advantage of the forfeiture resulting from a subsequent or continued breach). Because Oak Glen accepted six timely rental payments after the last late payment, waiver applies.

### III

■ Brewington raises two other arguments on appeal. She claims that Oak Glen is barred from bringing an action both because Oak Glen has already accepted late fees for the late rental payments, thus barring it from further action under the election-of-remedies doctrine, and because Oak Glen's continued acceptance of late rental payments modified the lease to allow for rental payments at later dates in the month. These arguments were raised for the first time on appeal.

■ Generally, a reviewing court may only review what is shown on the record to have been presented and considered by the trial court when it originally decided the matter. *Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988). A party may not obtain review by raising the same general issue raised below, but under a new theory. *Id.* The record shows no evidence that either the election-of-remedies theory, or the modification-of-the-lease theory were argued at the district court; consequently we cannot grant review of the decision based on these theories.

## DECISION

The repeated late rental payments constituted minor noncompliance with the Section 8 lease. Oak Glen has failed to present evidence of any of the four preconditions constituting material noncompliance under 24 C.F.R. § 247.3, so as to provide a basis for eviction. Furthermore, Oak Glen waived its right to evict Brewington for continued late payments of rent by continuing to accept rent after the last late rental payment occurred. Accordingly, we reverse and remand to the district court to allow Oak Glen to proceed on the remaining grounds alleged for termination of the tenancy.

**Reversed and remanded.**