STATE OF MINNESOTA

IN SUPREME COURT

A23-1048

Court of Appeals                                                 Hennesy, J.
                                                        Took no part, Gaïtas, J.


Hook & Ladder Apartments, L.P.,

                    Respondent,

vs.

Nichole Nalewaja,

                    Appellant,

John Doe, et. al.,                                      Filed: September 24, 2025
                                                        Office of Appellate Courts

                    Defendants.


_____


Erik F. Hansen, Elizabeth M. Cadem, Kiley Eichelberger, Burns & Hansen, P.A., Minneapolis, Minnesota, for respondent.

Gary Van Winkle, Courtney Arthur, Luke Grundman, Julia D. Zwak, Mid-Minnesota Legal Aid, Minneapolis, Minnesota for appellant.

Keith Ellison, Attorney General, Liz Kramer, Solicitor General, Katherine Kelly, Rebecca Stillman, Assistant Attorneys General, Saint Paul, Minnesota, for amicus curiae Minnesota Attorney General.

Lawrence McDonough, Phillip Mellon , Bloomington, Minnesota, for amicus curiae HOME Line.

Shana L. Tomenes, Abigail Hanson, James W. Poradek, Saint Paul, Minnesota, for amicus curiae Housing Justice Center.

Aaron D. Van Oort, Jeffrey P. Justman, Faegre, Drinker, Biddle & Reath LLP, Minneapolis, Minnesota, for amicus curiae Minnesota Multi Housing Association.

Micala Tessman, Alexander Lindenfelser, Certified Student Attorney, Gordon Tessman Law, Minneapolis, Minnesota, for amicus curiae National Lawyers Guild - Minnesota Chapter.

Heather Mendiola, Lisa Hollingsworth, Valerie Perkins, Austen Fisher, Kristin Boynton, Certified Student Attorney, Saint Paul, Minnesota, for amicus curiae Southern Minnesota Regional Legal Services.

_____

## S Y L L A B U S

1.      The common law rule that a landlord who accepts rent with knowledge of a tenant's breach waives the right to evict based on that breach applies equally to private and publicly subsidized tenancies.

2.      Whether a landlord has accepted rent for the purpose of the waiver-by-acceptance doctrine is a question of fact that is determined based on the totality of the circumstances, including a landlord's conduct after a rental payment is made.

Reversed and remanded.

## O P I N I O N

HENNESY, Justice.

This case concerns the common law doctrine of waiver by acceptance of rent, which bars a landlord from evicting tenants for a past breach of lease if the landlord accepts rent with knowledge of the breach. *Kenny v. Seu Si Lun*, 112 N.W. 220, 221 (Minn. 1907). In *Westminster Corp. v. Anderson*, the court of appeals held that the doctrine of waiver by

2

acceptance did not apply to rental payments made by public housing agencies on behalf of tenants. 536 N.W.2d 340, 343 (Minn. App. 1995). Here, both the district court and court of appeals held that *Westminster* controlled and that, following *Westminster*, the doctrine of waiver by acceptance did not apply in this case. For the reasons discussed below, we overrule *Westminster* and hold that the doctrine of waiver by acceptance applies equally to private and publicly subsidized tenancies. Accordingly, we reverse and remand.

**FACTS**

Respondent Hook & Ladder Apartments, L.P. owns an apartment building in Minneapolis. On June 17, 2022, appellant Nichole Nalewaja entered into a residential lease agreement with Hook & Ladder for an apartment in that building. Nalewaja's lease was subject to the Low-Income Housing Tax-Credit Program governed by Internal Revenue Code section 42. Specifically, her tenancy was supported by the Section 8 project-based voucher program,[1] which is administered by the U.S. Department of Housing and Urban Development (HUD). Under this program, the Minneapolis Public Housing Authority (MPHA) paid Hook & Ladder $1,335 per month for Nalewaja's unit.[2]

---

[1]     The Section 8 program is governed by 24 C.F.R. § 983. Under this program—both at the time relevant to this case and today—rental assistance is "attached to the structure" rather than individual tenants. 24 C.F.R. § 983.5(a)(1). A public housing agency contracts with the owner of a building and "makes housing assistance payments to the owner for units leased and occupied by eligible families." 24 C.F.R. § 983.5(a)(4).

[2]     According to the HUD tenancy addendum, Nalewaja was also required to pay Hook & Ladder $22 per month. There is no indication in the record, however, that Nalewaja ever signed the HUD tenancy addendum, and Nalewaja testified that she "was told I had to pay zero when I signed the lease." The district court did not make any findings of fact as to whether Nalewaja was required to pay any amount of rent to Hook & Ladder.

Nalewaja fell behind on her utility payments, and on October 3, 2022, the power to Nalewaja's unit was disconnected.[3] Nalewaja testified that she "went into a panic" when the lights went off. She worried that the food in the refrigerator would spoil and that her children were unsafe without the lights on. Early in the morning on October 4, Nalewaja and her boyfriend "broke into" the building's utility closet and reconnected Nalewaja's electricity. In doing so, they inadvertently disconnected the electricity for other units in the building. On October 5, 2022, when investigating another resident's complaint about the power shutoff, a Hook & Ladder employee discovered security video of Nalewaja and her boyfriend breaking into the utility closet.

MPHA made rental payments for Nalewaja's unit to Hook & Ladder in November 2022, December 2022, and January 2023.[4] On March 14, 2023, Hook & Ladder filed an eviction complaint against Nalewaja. The complaint alleged that Nalewaja breached her lease by breaking into the utility closet on October 4, 2022.

---

[3] Nalewaja brought a counterclaim alleging that Hook & Ladder was responsible for unlawfully shutting off her power. Hook & Ladder responded that it was not responsible for the utility company's actions in shutting off the power and that the shutoff was lawful. The district court dismissed the counterclaim, noting that counterclaims cannot be litigated in an eviction action and that the record did not support the counterclaim. The district court did not make specific findings about who was responsible for the shutoff or whether the shutoff was lawful.

[4] An email from an MPHA employee indicates that MPHA stopped paying rent in January 2023 when MPHA realized that Hook & Ladder had never submitted the required HUD Tenancy Addendum. Hook & Ladder's eviction complaint did not cite MPHA's stoppage in paying rent as one of the alleged breaches of lease serving as its grounds for seeking eviction.

4

On May 25, 2023, Nalewaja brought a motion to dismiss. Nalewaja argued that Hook & Ladder had waived its right to evict her by accepting three months of MPHA payments after Hook & Ladder knew of Nalewaja's breach. At the motion hearing, Nalewaja's attorney represented that he "was able to meet with representatives of the [MPHA], and they confirmed to me that none of those payments were ever returned by the landlord. . . ."

Hook & Ladder did not contest that it had accepted the MPHA payments. Instead, it offered three reasons why accepting those payments did not waive its right to evict. First, Hook & Ladder relied on *Westminster* for the proposition that "the doctrine of waiver does not apply to a landlord's acceptance of housing assistance payments from a public housing agency." *See* 536 N.W.2d at 341. Second, Hook & Ladder argued that the traditional doctrine of waiver requires a factual finding that a landlord manifested an intent to waive the right to evict, and Hook & Ladder asserted that it did not manifest that intention. Finally, Hook & Ladder argued that Nalewaja's lease contained a non-waiver clause.

The district court concluded that *Westminster* controlled and dismissed Nalewaja's motion. The court did not reach Hook & Ladder's alternative arguments. The case proceeded to trial, where Nalewaja argued that any breach of the lease was not material and that Hook & Ladder brought the eviction action in retaliation for her complaints about illegal utility billing practices. The district court issued an order holding that Nalewaja had materially breached her lease by breaking and entering into the utlilty closet, but did not address the retaliation argument.

5

At the court of appeals, Nalewaja argued that the district court erred in four ways: (1) denying Nalewaja's counterclaim regarding the unlawful termination of her utilities; (2) concluding that Nalewaja materially breached the lease, thereby providing the required good cause for her family's eviction; (3) holding that Hook & Ladder's acceptance of rent did not waive its right to evict; and (4) failing to address Nalewaja's claim that the eviction action was retaliatory.

In an unpublished decision, the court of appeals affirmed the district court with respect to the first three issues, but concluded that the district court erred by failing to address Nalewaja's retaliation defense. The court of appeals remanded the case on that issue. *Hook & Ladder Apartments, L.P. v. Nalewaja*, No. A23-1048, 2024 WL 3324809, at *3–7 (Minn. App. July 8, 2024). On the issue of waiver, the court of appeals determined that this case is not distinguishable from *Westminster* and held that *Westminster* controlled. *Id.* at *7. Nalewaja petitioned this court for review raising only the waiver issue.

## ANALYSIS

This case is about the common law doctrine of waiver. *See Westminster*, 536 N.W.2d at 340 (noting that waiver is a common law doctrine). "The application or extension of our common law is a question of law that we review de novo." *Soderberg v. Anderson*, 922 N.W.2d 200, 203 (Minn. 2019). To the extent that the lower courts here relied upon the court of appeals' prior decision in *Westminster*, we are not bound to follow court of appeals precedent. *Herlache v. Rucks*, 990 N.W.2d 443, 451 (Minn. 2023).

We begin our analysis with a discussion of the waiver-by-acceptance doctrine, and then consider whether *Westminster* is consistent with our case law and the policies that

6

underlie this jurisprudence. We then address how the waiver-by-acceptance doctrine is to be applied and conclude by discussing its application and our remand in Nalewaja's case.

I.

A.

The general rule in Minnesota is that a landlord's acceptance of rent with knowledge of a tenant's breach of the lease operates as a waiver of the landlord's ability to evict the tenant for that breach.[5] *Gluck v. Elkan*, 30 N.W. 446, 446 (Minn. 1886). As early as 1886, we recognized that "[t]he receiving of rent from month to month would be effectual as a waiver" for a tenant's past breach. *Id.* We again articulated this rule in *Kenny v. Seu Si Lun*, 112 N.W. at 221. In that case, tenants breached their lease by selling opium on the premises in April 1906. *Id.* at 220. In May 1906, the landlord personally collected rent from the tenants. *Id.* In June 1906, the landlord brought an eviction action based on the April breach. *Id.* The district court found for the landlord, but we reversed, holding that the landlord's acceptance of rent "operates to bar the landlord from asserting against the tenant past causes of forfeiture under the terms of the lease which were known to him at the time of such payment." *Id.* at 221. We commented that this rule "is as ancient as it is

---

[5] Minnesota law recognizes several different grounds for eviction, including nonpayment of rent, holding over after a tenancy has ended, and breach of lease. *See* Minn. Stat. §§ 504B.285, subds. 1(a)(2), (3) (2024); 504B.291 (2024) (concerning breach of lease, holdover, and nonpayment of rent as grounds for eviction). The waiver-by-acceptance doctrine at issue in this case applies to evictions based on a tenant's conduct that materially breaches their lease. There are also waiver rules that apply to holdover and non-payment evictions. References to waiver by acceptance in this opinion refer only to the doctrine as applied to acceptance of rent after a known breach, and not any of these related, but distinct, doctrines.

current," citing English legal treatises for the proposition that accepting rent with knowledge of a breach reaffirms the lease. *Id.* (citing and quoting Coke on Littleton (1st Am. from the 19th London Ed.) 211b, § 341 ("But if he accept[s] a rent due at a day after [a known breach], he shall not [evict] for the condition broken, because he thereby affirmeth the lease to have a continuance.")).

Importantly, the waiver-by-acceptance doctrine applies only to those breaches that a landlord knew about at the time they accepted rent. *Thomas Peebles & Co. v. Sherman*, 181 N.W. 715, 716 (Minn. 1921). In *Thomas Peebles & Co v. Sherman*, we held that a landlord who did not learn that a tenant had sublet the property in breach of their lease until several days *after* accepting rent had not waived the right to evict. *Id.* Further, the waiver-by-acceptance doctrine does not bar a landlord from evicting a tenant for subsequent breaches, even if the landlord previously waived a similar breach by accepting rent. *Zotalis v. Cannellos*, 164 N.W. 807, 807–08 (Minn. 1917). For example, the lease at issue in *Gluck v. Elkan* required the tenant to keep a stairway "open, clean, and free from rubbish." 30 N.W. at 446. The tenant failed to do so, and the landlord accepted rent for several months with knowledge of the tenant's breach. *Id.* The tenant, however, continued to violate the lease after the last payment the landlord accepted. *Id.* In concluding that the landlord had not waived these later breaches, we noted that the tenant's breach "was of a continuing nature. The receiving of rent from month to month would be effectual as a waiver for the past breach of it, but that would not relieve the tenant from the duty of performance in the future." *Id.*

In determining when the waiver-by-acceptance doctrine applies, courts look to a landlord's objective actions rather than their subjective intent. Although a party's intent to waive is relevant in other contexts,[6] we made clear in *Kenny* that a landlord's intent to waive a known breach of a lease is not relevant in eviction cases. 112 N.W. at 221 ("The authorities to which we are referred . . . to the effect that waiver generally is a question of fact as to the intention of the parties, have no relevancy.").

A landlord's objective actions (or inaction), however, are relevant to whether a landlord is deemed to have accepted rent for the purpose of the waiver-by-acceptance doctrine. And this inquiry does not necessarily end when a tenant makes a payment to a landlord. In *Kenny*, for instance, we noted that the landlord provided a receipt for the amount paid as rent in concluding that the landlord accepted rent. *Id.* at 222. Other Minnesota courts have also looked to landlords' conduct after receiving rent payments to determine whether they accepted the payments. *See, e.g.*, *Park v. Schneider*, No. CX-99-83, 1999 WL 540183, at \*4 (Minn. App. July 27, 1999) (concluding that landlord had not accepted rent, even though tenant slid a check under landlord's door, because landlord sent tenants a letter stating that he would not accept the rent and would return it to tenants at an upcoming hearing).

---

[6]  *See, e.g.*, *In re Millers' & Mfrs.' Ins. Co.*, 106 N.W. 485, 488 (Minn. 1906) (considering whether a provision of an insurance policy was waived, and noting that "waiver is a voluntary act, and implies an election by the party to dispense with something of value, or to forego some advantage which he might at his option have demanded and insisted on. Both intent and knowledge, actual or constructive, of the facts, are therefore essential elements.").

The waiver-by-acceptance doctrine serves important policy goals. As we explained over a century ago, the acceptance of rent "affirm[s] the lessee to have lawful possession." *Kenny*, 112 N.W. at 221 (citation omitted) (internal quotation marks omitted). As the court of appeals has likewise observed, the rule functions "to instill a feeling of repose in the tenant; the landlord, by accepting the rent, effectively reaffirms the lease between parties. . . . In other words, the waiver rule provides a sense of security for the tenant that the lease remained in effect." *Oak Glen of Edina v. Brewington*, 642 N.W.2d 481, 486 (Minn. App. 2002). The waiver-by-acceptance doctrine also ensures that a landlord initiates eviction proceedings in a timely manner rather than retaining a tenant's material breach for use at the landlord's most advantageous moment—a risk that is particularly troubling where, as in this case, there are allegations that the landlord pursued eviction for a retaliatory purpose. As several amici in this case point out, without the waiver-by-acceptance doctrine, a landlord could bring a pretextual eviction action at any time based on past conduct that the landlord did not consider serious enough to warrant eviction at the time. *See, e.g.*, *Parkin v. Fitzgerald*, 240 N.W.2d 828, 833 (Minn. 1976) (concluding that an eviction action was retaliatory and noting that any breach by the tenant was waived because the landlord continued to accept rent for five months). But even when retaliation is not in play, it is important for landlords to decide quickly whether to evict based on a known breach. When a tenant's breach harms or disturbs other tenants, the other tenants benefit from a system that requires a landlord to act quickly. Potential drawbacks of this rule for landlords and neighboring tenants are tempered by the fact that the rule only applies

to past breaches. *See Gluck*, 30 N.W. at 446. If a tenant repeats their harmful conduct, a landlord is free to bring a new eviction action. *Id.*

With this in mind, we now turn to whether the court of appeals' decision in *Westminster* is consistent with our case law and the underlying principles of the waiver-by-acceptance doctrine. As we do, we also bear in mind that "[i]t is the public policy of this state," according to the Minnesota Human Rights Act, "to secure for persons in this state, freedom from discrimination . . . in housing and real property because of . . . status with regard to public assistance . . . ." Minn. Stat. § 363A.02, subd. 1(a)(2) (2024). Thus, we consider whether *Westminster* provides an adequate reason to differentiate between tenants based on their public assistance status.

B.

For context, we first briefly summarize the history of the waiver-by-acceptance doctrine in the public housing context. Before 1995, some Minnesota courts applied the waiver-by-acceptance doctrine to publicly subsidized tenancies as well as private tenancies. *E.g.*, *N. Mgmt., Inc. v. Bade*, No. C9-94-3915, Order at 5 (Stearns Cnty. Dist. Ct. filed Nov. 25, 1994) ("By accepting the [public housing agency's] share of the rent . . . [the landlord] has waived any right to base its action for unlawful detainer on any violations that occurred prior to [the date the landlord accepted rent with knowledge of the breach]."); *Oakwood Ct. Apartments v. Volk*, No. C6-94-1067, Order at 2 (Sherburne Cnty. Dist. Ct. filed Sep. 2, 1994) ("[Landlord's] acceptance of [HUD's] portion of the rent under the lease, with knowledge of the alleged breach, acts as a waiver of . . . the right to rely on the breach . . . as a basis for terminating the Defendant's tenancy."); *Etna Woods Apartments*

11

*v. Ramgran*, No. C8-92-2614, Order at 2 (Ramsey Cnty. Dist. Ct. filed Mar. 25, 1992) ("[Landlord's] acceptance of [HUD's] portion of the rent under the lease, with knowledge of said breaches, acts as a waiver of . . . the right to rely on the breaches . . . as a basis for terminating the Defendant's tenancy."). In *Westminster*, however, the court of appeals created an exception to the waiver-by-acceptance doctrine for acceptance of rent paid by a public housing agency. 536 N.W.2d at 340. In that case, a tenant argued that her landlord waived its right to terminate her lease because the landlord accepted Section 8 housing assistance payments from the Minnesota Housing Finance Agency with knowledge of her breaches. *Id.* at 341. In analyzing whether the waiver-by-acceptance doctrine applied, the court of appeals followed the Illinois Supreme Court's reasoning in *Midland Management Co. v. Helgason*, 630 N.E.2d 836 (Ill. 1994). *Westminster*, 536 N.W.2d at 341–42. According to the court of appeals in *Westminster*, *Midland* cited four reasons for concluding the waiver-by-acceptance doctrine did not apply to such cases:

(1)     Under the terms of the lease between [the landlord] and the tenant, which controlled the parties' rights and obligations, the housing assistance payments were not defined or referred to as rent;

(2)     HUD was not a party to the lease agreement, and it did not appear from the lease agreement that HUD obtained any possessory interest in the property;

(3)     When a subsidized housing unit becomes vacant following the eviction of an eligible tenant, under the terms of the housing assistance contract, the landlord is entitled to continue to receive vacancy payments for 60 days (suggesting that the housing assistance payment flows with the rental unit, and not the section 8 tenant); and

(4)     To characterize housing assistance payments as rent would effectively defeat HUD's interest in the development and availability of

12

economically mixed housing for low-income families because landlords would be less apt to open their doors to low-income families and would seek to fill their vacancies with non-rent-assisted families.

*Westminster*, 536 N.W.2d at 342 (citing *Midland*, 630 N.E.2d at 839–41). Consequently, the court of appeals affirmed the district court's decision that the tenant could not raise a waiver-by-acceptance defense. *Id.* at 343.

C.

We disagree with the *Westminster* decision for several reasons. As discussed below, the factors *Westminster* relied on do not support its conclusion or its disparate treatment of tenants based on their public assistance status. Nor is Hook & Ladder's additional assertion compelling—that it would be unfair to apply the waiver-by-acceptance doctrine in the public housing context because, as a practical matter, landlords accept automatic, electronic, lump-sum payments from public housing agencies. Instead, *Westminster*'s reasoning—in addition to being inconsistent with our landlord-tenant law—is at odds with state policy.

1.

i.

First, we disagree with *Westminster*'s conclusion that housing assistance payments are not rent for the purpose of the waiver-by-acceptance doctrine. The first reason the *Westminster* court provided for its holding was that the parties did not define or refer to housing assistance payments as rent in their lease. 536 N.W.2d at 342. But characterizing housing assistance payments in a lease as something other than rent does not apply to all

13

public housing tenancies. Here, contrary to the lease in *Westminster* (and the lease in *Midland*), Nalewaja's lease specifically refers to housing assistance payments as rent.

But, more importantly, we disagree that it is significant whether the lease in question refers to a payment as "rent." Even if Nalewaja's lease did not refer to MPHA's payments as rent, that fact would not conflict with the waiver-by-acceptance doctrine because Minnesota law does not employ such a rigid definition of rent. In *Central Union Trust Co. of New York* v. *Blank*, for instance, we applied a much less formalistic analysis to determine what constitutes rent. 210 N.W. 34, 35 (Minn. 1926). In that case, we determined that a tenant's covenant to pay property taxes was part of the consideration for the tenant's occupancy, and we noted that the parties understood these payments to be "in lieu of additional rent." *Id.* at 36. Similarly, housing assistance payments from public housing agencies are the consideration that landlords receive for a tenant's occupancy, in lieu of additional rent from the tenant.

In addition, Minnesota's landlord-tenant law does not use the term "rent" in defining what makes a person a tenant. Instead, Minnesota Statutes section 504B.001—which defines key terms in Minnesota's landlord-tenant laws—defines "residential tenant" as "a person who is occupying a dwelling in a residential building under a lease or contract, whether oral or written, *that requires the payment of money or exchange of services . . . .*" Minn. Stat. § 504B.001, subd. 12 (2024) (emphasis added). The statute does not use the word "rent" to describe this exchange. *Id.* In fact, Minn. Stat. § 504B.001 does not define the word "rent" at all. *Id.* While chapter 504B does not regulate the common law doctrine of waiver by acceptance, the fact that both statutory and common law approaches to

14

landlord-tenant law in Minnesota focus on the *function* of rent indicates that *Westminster*'s focus on a formal definition of the term is misplaced.

The fact that some leases may not characterize housing assistance payments as rent does not justify *Westminster*'s exception to the waiver-by-acceptance doctrine. Regardless of how they are characterized, housing assistance payments constitute much or all of the consideration that landlords receive in exchange for a tenant's occupancy.[7] We conclude that housing assistance payments are rent for the purpose of the waiver-by-acceptance doctrine.

ii.

We are also not persuaded by *Westminster*'s focus on *who* pays the rent. The *Westminster* court found it significant that the payor—HUD—was not a party to the lease and that no landlord-tenant relationship existed between HUD and the landlord. We disagree that the relationship between the payor and the landlord is relevant to the waiver-by-acceptance doctrine.

In the private housing context, third parties like friends or relatives often pay a landlord rent on behalf of a tenant. We have never held that a tenant must personally pay rent to invoke the waiver-by-acceptance doctrine. Even *Midland*, the Illinois case on which *Westminster* relied, explicitly stated that "[i]t is immaterial by whom the rent is paid if it is

---

[7] Under HUD regulations both at the time relevant to this case and at present, tenants pay a portion of the total rent owed, typically about 10% of their monthly income, or a minimum amount of $25 a month, and the public housing agency pays the remainder. 24 C.F.R. §§ 983.353, 5.628(a), 5.630(a). Tenants can seek exemptions, however, if they are unable to pay the minimum rent because of financial hardship. 24 C.F.R. § 5.628(b). In these cases, the public housing agency pays the entire amount due to the landlord.

received as rent and on behalf of the lessee." *Midland*, 630 N.E.2d at 839 (citing 51C C.J.S. Landlord & Tenant § 117(4) (1968)).

Hook & Ladder argues that applying the waiver-by-acceptance doctrine to third-party payors undercuts the policy behind the doctrine because, when the tenant does not personally deliver rent or "witness its acceptance by the landlord," the tenant does not benefit from the sense of security that comes with reaffirmance of the lease. We disagree that a tenant needs to directly witness a landlord accepting rent to benefit from the waiver-by-acceptance doctrine. Many private tenants do not directly witness their landlords accepting rent, either because they do not pay rent in person or because a third party pays on their behalf. We have never said that failing to witness a landlord accepting rent prevents these private tenants from asserting the waiver-by-acceptance doctrine. Tenants who receive public housing assistance should likewise be entitled to rely on waiver by acceptance.

### iii.

We also disagree with the *Westminster* court that HUD regulations giving public housing agencies discretion to contract with landlords to temporarily continue providing housing assistance payments after a tenant has vacated a unit supports excluding tenants receiving housing assistance from the doctrine of waiver by acceptance. These contracts may provide for up to two months of "vacancy payments" after a tenant moves out. 24 C.F.R. § 983.352(b). The court of appeals concluded that the availability of these vacancy payments suggests that the assistance "flows with the unit" rather than the tenant. *Westminster*, 536 N.W.2d at 342.

16

Here, there is no evidence in the record as to whether Hook & Ladder's contract with MPHA provided for vacancy payments. Again, this only highlights that the availability of vacancy payments may not apply to all public housing tenancies. But even if it did, our analysis would be the same. It is unclear why the *Westminster* court concluded it was significant that assistance "flows with the unit rather than the tenant." *See id.* To the extent that the court meant that this confirms housing assistance payments are not rent, we disagree. While a vacancy payment itself might not be considered rent for the waiver-by-acceptance doctrine, the housing assistance payments that precede the vacancy payments are. The fact that payments might continue for a limited period of time, beginning when a tenant vacates a property, does not negate the fact that housing assistance payments made *while a tenant is occupying the unit* are consideration for the tenant's occupancy. The potential availability of payments after a tenant vacates does not justify *Westminster*'s exception to the waiver-by-acceptance doctrine.

iv.

Finally, we disagree with *Westminster*'s conclusion that including public housing tenancies in the waiver-by-acceptance doctrine would "effectively defeat HUD's interest in the development and availability of economically mixed housing." *Westminster*, 536 N.W.2d at 342 (citation omitted) (internal quotation marks omitted). *Westminster* reasoned that there was a "real possibility that applying the doctrine of waiver to Section 8 payments will make landlords less inclined to lease to low-income tenants, [which] would inevitably operate to disadvantage low-income tenants." *Id.* at 342–43. The opinion cited no evidence supporting this assertion, which could arguably be said of any legal protection

17

that applies to public housing tenants. And the opinion did not address the Minnesota Human Rights Act, which *prohibits* landlords from discriminating on the basis of public assistance status.[8] Minn. Stat. § 363.03, subd. 2 (1994).[9] Nor did the *Westminster* court consider the tax credits that incentivize property owners to accept public housing vouchers. *See* I.R.C. § 42. Given the policy tools available to incentivize providing public housing and prevent housing discrimination based on public assistance status, we are not convinced by *Westminster*'s conclusion that applying the waiver-by-acceptance doctrine to payments received from public housing agencies would ultimately harm public housing assistance recipients by encouraging discrimination.

In sum, we do not find that any of the reasons *Westminster* cited justify applying a different rule regarding rent acceptance in the public housing context than in the private housing context. But before rejecting *Westminster*, we consider a new argument Hook & Ladder raises to defend the *Westminster* rule.

2.

Apart from the reasons the *Westminster* court cited, Hook & Ladder argues that there is another reason to affirm the *Westminster* rule. Hook & Ladder asserts that it would be unfair to apply the waiver-by-acceptance doctrine in the public housing context because it is impossible, as a practical matter, for landlords to avoid accepting automatic, electronic,

---

[8] The *Westminster* court did not have the benefit of briefing on this issue, as the parties in *Westminster* did not raise any arguments regarding the Minnesota Human Rights Act.

[9] This statutory protection for tenants who receive public assistance is still in effect today, now codified at Minn. Stat. § 363A.09 (2024).

18

lump-sum payments from public housing agencies.  For the reasons discussed below, we disagree.

The actual mechanics of MPHA's payment system are not clear from the record. Hook & Ladder cites the MPHA Housing Choice Voucher Program Operating Procedures for the proposition that landlords receive "automatic, monthly, lump-sum payments" on behalf of all subsidized tenants through an internet portal.  There is no evidence of this online portal in the record.  Still, we assume for the sake of argument that Hook & Ladder received automatic, electronic, lump-sum payments from MPHA on Nalewaja's behalf.

Automatic electronic payments are not unique to the public housing context.  The use of online portals to process automatic rent payments has not prevented application of the waiver-by-acceptance doctrine in the private housing context.  *See, e.g.*, *Christy v. Berends*, No. A07-1451, 2008 WL 2796663, at *4 (Minn. App. July 22, 2008) (concluding, in the private housing context, that "although waiver through acceptance of rent is complicated by the fact that rent was paid through automatic electronic transfer, the testimonial evidence clearly establishes that respondent intended to accept the May rent and made no effort to return it to appellant").[10]

---

[10]	To the extent that the *Christy* court relied on the landlord's subjective intention, this was an error.  *See Kenny*, 112 N.W. at 221 (explaining that a landlord's subjective intent is not relevant to the waiver-by-acceptance doctrine).  We cite this case only as an example of an automatic electronic payment in the private housing context.  Without considering the *Christy* landlord's intent, the fact that the landlord made no effort to return the automatic payment would be relevant to determining whether the landlord accepted the payment.

19

While the "lump-sum" nature of project-based housing payments may differ from payments made by private payors, we are not convinced that this aspect of some (but not all) public housing payments makes it impossible for landlords to avoid accepting rent on behalf of individual tenants. Here, the record suggests that MPHA has the capacity to halt payments for individual tenants.[11] But even if it does not, it is important to note the difference between receipt and acceptance. Even if a public housing authority transmits payment to a landlord, via a lump-sum electronic payment or otherwise, that landlord can take independent action to avoid accepting that payment. For these reasons, we are not persuaded by Hook & Ladder's argument that *Westminster* should be preserved because landlords cannot avoid accepting public housing payments.

We have a responsibility to develop the common law of landlord-tenant relationships and have recognized or extended rights or remedies in this area "when there is a compelling reason to do so." *Cent. Hous. Assocs., LP v. Olson*, 929 N.W.2d 398, 408 (Minn. 2019). Those circumstances exist here. *Westminster*'s blanket exclusion of public housing payments from the waiver-by-acceptance doctrine has prevented the common law from developing to account for the logistical realities of modern public housing payments. We are confident that, given the chance, courts will develop the common law of waiver by acceptance to adapt to the logistics of housing assistance payments. To facilitate this process, we address considerations in determining whether a landlord has accepted rent in Part II.

---

[11] The record reflects that MPHA stopped sending payments for Nalewaja's unit in January 2023, after discovering that necessary paperwork had not been filed.

20

## 3.

We are not persuaded by any of the reasons cited in *Westminster* or by Hook & Ladder for excluding public housing payments from the waiver-by-acceptance doctrine. We will not exclude tenants who receive public assistance from the waiver-by-acceptance doctrine without good reason because, under the Minnesota Human Rights Act, it is state policy that people should be free from discrimination based on their status with regard to public assistance. Minn. Stat. § 363A.02, subd. 1(a)(2). The waiver-by-acceptance doctrine is an important protection that should be available to all tenants regardless of status with respect to public assistance. Accordingly, *Westminster* is overruled.

## II.

Having overruled *Westminster*, we take this opportunity to comment on what constitutes acceptance for the purpose of the waiver-by-acceptance doctrine and then turn to the facts of this case. A landlord who receives a payment from a tenant or a public housing agency and takes no further action has accepted the payment for the purpose of the waiver-by-acceptance doctrine. But a landlord may take steps promptly upon receipt of payment to avoid acceptance. Whether a landlord has accepted a rental payment is a question of fact for courts to evaluate based on the totality of the circumstances in each case. Relevant circumstances in making this determination may include whether the landlord informed the tenant or the public housing agency that the landlord does not accept the payment, whether the landlord attempted to return the funds, whether the landlord segregated the rental payment at issue, whether the landlord placed the funds in escrow,

and whether the landlord refrained from using the payment at issue. There may be other relevant facts depending on the circumstances of each case.[12]

Returning to the facts of this case, Hook & Ladder does not contest that it accepted MPHA's payment on behalf of Nalewaja. Because we hold that the doctrine of waiver by acceptance applies to tenants receiving housing assistance, Hook & Ladder's acceptance of rent with knowledge of Nalewaja's breach of lease operates as a waiver that prevents Hook & Ladder from evicting her based on that breach.

We recognize that Hook & Ladder did not have the benefit of this opinion when it accepted the rental payments at issue. For 30 years landlords have relied on *Westminster* in accepting rental payments after learning of tenants' breaches with the understanding that they did not waive any right by doing so. But as we have held, it is a landlord's conduct in accepting rent, and not their subjective intent to waive a breach, that matters for the waiver-by-acceptance rule. *Kenny*, 112 N.W. at 221. Further, any unfairness to landlords that may result from overruling *Westminster* is mitigated by the fact that the waiver-by-acceptance doctrine only applies to past, known breaches. *Id.* Even if a landlord like Hook & Ladder is deemed to have waived a past breach, nothing prevents them from bringing a new eviction action if a tenant repeats a breach following acceptance of rent.

---

[12] We emphasize that nothing in this opinion is intended to create any new obligation for public housing agencies. Public housing agencies may choose to work with landlords to halt payments at a landlord's request, to the extent permitted by their state, federal, and contractual obligations; a public housing agency's ability and willingness to halt a payment may be one of the facts a court considers in determining whether a landlord has accepted rent.

Determining that the waiver-by-acceptance doctrine applies to MPHA's payments on behalf of Nalewaja does not dispose of this case. Hook & Ladder has also raised the issue of the non-waiver clause in the parties' lease. We decline to address this issue, which should be decided in the first instance by the district court. *See Jacobs v. City of Columbia Heights*, 9 N.W.3d 536, 540 (Minn. 2024) ("A reviewing court must generally consider only those issues that the record shows were presented and considered by the trial court." (citation omitted) (internal quotation marks omitted)). On remand, the district court can consider the non-waiver clause, as well as Nalewaja's retaliation defense. *See Hook & Ladder Apartments*, 2024 WL 3324809, at *7 (remanding to the district court to consider Nalewaja's retaliation defense).[13]

### CONCLUSION

For the forgoing reasons, we reverse the decision of the court of appeals and remand to the district court for further proceedings consistent with this opinion.

Reversed and remanded.

GAÏTAS, J., took no part in the consideration or decision of this case.

---

[13] The issue of Nalewaja's retaliation defense is not before this court. Accordingly, the court of appeals' remand on that point stands, despite our reversal on the waiver-by-acceptance issue.